UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

SHREVEPORT CHAPTER #237 OF         CIVIL ACTION NO. 17-CV-01346
THE UNITED DAUGHTERS OF THE
CONFEDERACY

VERSUS                             JUDGE JAMES

THE CADDO PARISH COMISSION,        MAGISTRATE JUDGE HORNSBY
ET AL

**MEMORANDUM IN OPPOSITION TO PRELIMINARY INJUNCTIVE RELIEF**

MAY IT PLEASE THE COURT:

Plaintiff Shreveport Chapter #237 of the United Daughters of the Confederacy's seeking a preliminary injunction should be denied because Plaintiff has not met the requirements to obtain a preliminary injunction, particularly the requirement of demonstrating a likelihood of success on the merits of its claims.

I.     **Introduction and Summary of the Argument**

In order to obtain a Preliminary Injunction, the Plaintiff must satisfy four prerequisites:  (1) substantial likelihood that plaintiffs will eventually prevail on the merits; (2) a showing that plaintiffs will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to plaintiffs outweighs whatever damage the proposed injunction may cause the opposing parties; and (4) a showing that the injunction, if issued, would not be adverse to the public interest. *Planned Parenthood Ass'n of Hidalgo Cty. Tex., Inc. v. Suehs*, 692 F.3d 343, 348 (5th Cir.2012); *accord Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir.1974). The decision to grant or deny a preliminary injunction is

discretionary with the district court. *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir.1985). However, because a preliminary injunction is an extraordinary remedy, it "should not be granted unless the party seeking it has clearly carried the burden of persuasion on all four requirements." *Suehs*, 692 F.3d at 348. Consequently, the decision to grant a preliminary injunction "is the exception rather than the rule." *Miss. Power & Light Co.*, 760 F.2d at 621.

II. **Facts and Procedural Background**

On September 22, 2016, via Resolution No. 72 of 2016, the Caddo Parish Commission ("Commission") established a Citizen Advisory Subcommittee of its Long-Range Planning Committee. The purpose of this subcommittee was to review the issue of whether the Caddo Parish Courthouse Grounds were an appropriate location for the Confederate Monument. (Exhibit A) The subcommittee held several community meetings and reported to the Commission on August 17, 2017, recommending that two additional monuments be erected at the Caddo Parish Courthouse and the Confederate Monument be maintained. (Exhibit B) On October 19, 2017, the Commission adopted Resolution No. 69 which authorizes the Parish Administrator to pursue all legal means of removing the Confederate Monument from the Courthouse grounds. (Exhibit C).

The Parish owns the Courthouse Square, which is Block 23, City of Shreveport, and has done so since the 1840's. As that block has been used for public purposes to house the courthouse and at times a jail, no part of it has ever

been subject to corporeal possession by private persons to the exclusion of others.

## Law and Argument

I.   **Likelihood of Prevailing on the Merits.**

    A.   **Plaintiff Does Not Own the Property at Issue in the Instant Case**

Plaintiff does not and cannot own the portion of the Courthouse Square upon which the Confederate Monument sits. Plaintiff contends that it received an "oral donation" of that portion from the Police Jury in 1903. The "oral donation" referred to is in the June 18, 1903 minutes of the Police Jury, which state:

> The rules were suspended and Mr. W.H. Wise on behalf of the Daughters of the Confederacy made an earnest appeal for an appropriation of $1,000.00 for the confederate monument, at same time requesting that the monument association be given the front plat or portion of court house square as a site for the monument.
> Moved by J. S. Young that the $1,000.00 be allowed and the front plat of court house square be reserved for that purpose, which motion was unanimously adopted.

Louisiana law requires that donations inter vivos be made "by authentic act under the penalty of absolute nullity, unless otherwise expressly permitted by law." La. C.C.P. Art. 1541. This requirement was the same under La. Civil Code Art. 1536 (1870) at the time of this police jury meeting. There is no act or paperwork that the plaintiff can produce, other than these minutes, to show that the Police Jury ever conveyed the portion of Courthouse Square upon which the monument sits to the Daughters of the Confederacy. Further, the minutes state that the front plat is **reserved** for the purpose of erecting the monument. The request, as written in the minutes, shows that the police jury was asked to give

Page 3

the property for that purpose but deliberately chose instead to only reserve it. That language is not indicative of a conveyance of any kind.

Additionally, there is nothing to show that this alleged "oral donation" fits into any exception to the form required by the Civil Code. In fact, the Louisiana Constitution as it existed at the time of the police jury's action, expressly prohibited donations of public property; the police jury could not have legally donated the property. *La Constitution of 1898, Art. 58*, and the Plaintiffs are not entitled to rely on any actions other than what the law clearly requires.

Plaintiff alleges that since the monument has sat on the property since 1906, it has acquired the property by acquisitive prescription. However, it is well-settled law that private citizens cannot acquire property from the government via acquisitive prescription. Third parties occupying lands that have been dedicated to public use cannot acquire title thereto because those lands are out of commerce and not subject to private or individual ownership. *City of New Orleans v. Carrollton Land Company*, 60 So.2d 95 (1913); *Shreveport v. Frank C. Walpole*, 22 La. Ann. 526.

Plaintiff attempts to argue that the Courthouse Square may not belong to the Parish because United Title, which rendered an opinion on the ownership of the Courthouse Square in 2002, did not find any written conveyances to Caddo Parish. However, the plat of the square from as far back as 1857 shows that the Lot 23 of the City of Shreveport has been designated for the Courthouse. (Exhibit D). Moreover, parish police juries have been charged with providing the parish courthouses since 1813, further showing that any courthouse would have

been owned by the police jury for public benefit. L.S.A.-R.S. 33:4715 (Historical and Editorial Notes) Why else would Plaintiff have come to the Police Jury to request permission to erect its statute in front of the Courthouse?

If anything, by erecting the monument on public property, a sound argument can be made that the parish owns the monument and has the authority to dispose of it in any manner it pleases. *See Sarpy v. Municipality No. 2, 9 La.Ann. 597, 599 (La.1854); see also La. Civ. Code art. 454 (1870) ("Things which are for the common use of a city or other place, as streets and public squares, are likewise public things.").*

For the foregoing reasons, Plaintiff cannot show that the actions of the Parish Commission are denying it any rights in its own personal property because plaintiff does not and cannot own the land beneath the monument.

B. Violation of Plaintiff's First Amendment Rights

Governments have the right to allow the erection of monuments on their property, and in doing so, a government is attempting to convey a certain thought or feeling in those who will see the structure. Government speech is exempt from First Amendment scrutiny. *Pleasant Grove City v. Summum,"* 555 U.S. 460, 464, 129 S.Ct. 1125, 172 L.Ed.2d 853 (2009) Following this logic, the 1903 police jury was attempting to convey a message by allowing the Daughters of the Confederacy to erect the confederate monument at the Courthouse. The 2017 parish commission has the same right of government speech to authorize the monument's removal.

Plaintiff asserts that defendants cannot raise government speech as a defense and cites *Matal v. Tam*, ___ U.S. ___, 137 S.Ct. 1744, 198 L.Ed.2d 366 in support of that assertion. However, Tam involved the plaintiff objecting to the Lanham Act governing how he could trademark something he, the plaintiff, owned. The case has no applicability here as government property is at issue.

C.  Violation of Plaintiff's Due Process Rights

To assert a violation of the 14th amendment, the Plaintiff has to show that it has been denied life, liberty or property. The parish commission is seeking removal of the confederate monument by all legal available means; it is authorized to have items removed from its public property. The Plaintiff does not have an interest in the property upon which the confederate monument sits. Or arguably the monument itself. Therefore, it has no right to block removal of the monument.

Additionally, if Plaintiff did have a property interest in the land upon which the monument sits, for there to be a constitutional violation, "it is necessary to ask what process the State provided, and whether it was constitutionally adequate." *Bowlby v. City of Aberdeen*, 681 F.3d 215, 222 (5th Cir.2012) (quoting *Zinermon v. Burch*, 494 U.S. 113, 126, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990)). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). In the instant case, there was a public hearing held prior to the commission's vote on the resolution. Plaintiff clearly had an opportunity to be heard. (Exhibit B)

Further, the Caddo Parish Commission formed a Monument Advisory Committee which studied this issue for over a year prior to the passage of Resolution 69. The president of United Daughters of the Confederacy #237 was a member of that advisory committee. (Exhibit E) Clearly Plaintiff had adequate notice and opportunity to be heard on the issue of removing the monument.

II. **Irreparable Harm**

Plaintiff alleges that the monument cannot be removed without expensive damage to its structure. The only item that it offers in support of that contention is estimates to repair the monument when it has been previously vandalized. This information is simply not enough to meet the burden of proof of irreparable harm. Arguably, what it does show is that in the event the monument belongs to Plaintiff and is damaged by someone other than Plaintiff removing it, the damage may well be repairable.

In addition, during prior discussions of removal of the monument, the parish has received two quotes for removal. (Exhibit F). While these quotes are indeed expensive, they too show that with the proper precautions, the monument can be removed.

Resolution 69 authorizes removal of the monument by all legal means. If the Plaintiff contends the monument belongs to it, then the option to remove it per their specifications, with minimal damage, would also belong to them. Plaintiff raised funds to erect the monument; presumably it can raise the funds required for removal.

### III. Injury to Plaintiff v. Damage of Injunction; Effect of Injunction on Public Interest

If the Court should determine that Plaintiff is not likely to prevail on the merits, then the Court need not engage in an inquiry balancing the injury to the plaintiff versus the damage of issuing an injunction and the public interest. *State of Tex. v. Seatrain Intern., S. A.*, 518 F.2d 175 (5th Cir.). However, the Fifth Circuit has held that "when a statute is enjoined, the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws." *Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 419 (5th Cir.2013). The U.S. Supreme Court has held that "any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 133 S.Ct. 1, 3, 183 L.Ed.2d 667 (2012). Based on this logic, the greater harm would be to the public because the commission was elected to represent them.

### Conclusion

Plaintiff cannot show a likelihood of prevailing on the merits because it does not own the property upon which the monument sits. Therefore, there is no denial of its first or 14th amendment rights. Plaintiff also cannot show irreparable harm because the monument can be removed and repaired, based on its own submissions. Finally, Plaintiff cannot show that any potential harm to it outweighs the public benefit of citizens being able to rely on the legislative actions of their elected officials. Because Plaintiff has not met the requirements

to justify the issuance of a preliminary injunction, the Motion for Preliminary Injunction should be denied.

Respectfully submitted,

OFFICE OF THE PARISH ATTORNEY
PARISH OF CADDO

BY: ___s/Donna Y. Frazier___
Donna Y. Frazier, Bar Roll No. 24420
Parish Attorney
Henry M. Bernstein, Bar Roll No. 03011
Assistant Parish Attorney
Government Plaza
505 Travis Street, Suite 810
P. O. Box 1127
Shreveport, Louisiana 71163-1127
Telephone (318) 226-6947
Facsimile (318) 226-6974
ATTORNEYS FOR KENYA ELLIS AND JORDAN BIRD

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was served on all counsel of record in this matter via CM/ECF on November 15, 2017.

Dick "Dave" Knadler
Law Office of Dick "Dave" Knadler
3223 First Street
Mansfield, LA 71052

___s/Donna Y. Frazier___
OF COUNSEL