UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| SHREVEPORT CHAPTER #237 OF THE UNITED DAUGHTERS OF THE CONFEDERACY | CASE NUMBER: 17-CV-01346 |
| Plaintiff, | JUDGE: ROBERT G. JAMES |
| VERSUS | |
| THE CADDO PARISH COMMISSION, et al. | MAGISTRATE JUDGE: MARK L. HORNSBY |
| Defendants. | |

**REPLY MEMORANDUM TO MEMORANDUM IN OPPOSITION TO PRELIMINARY INJUNCTIVE RELIEF FILED BY THE DEFENDANTS**

**MAY IT PLEASE THE COURT:**

**INTRODUCTION AND FACTS**

On June 18, 1903, the Plaintiff asked the Defendant Commission's predecessor the Caddo Parish Police Jury for $1,000.00 and be given a plot of land for the construction of the Confederate Monument on the Caddo Parish Courthouse Square. The Caddo Parish Police Jury's onerous donation to the Plaintiff UDC referred to in the minutes (dated June 18, 1903) of the Caddo Parish Police Jury states:

> The rules were suspended and Mr. W.H. Wise on behalf of the Daughters of the Confederacy made an earnest appeal for an appropriation of $1,000.00 for the confederate monument, at same time requesting that the monument association be given the front plat or portion of court house square as a site for the monument.
> Moved by J.S. Young that the $1,000.00 be allowed and the front plat of court house square be reserved for that purpose, which motion was unanimously adopted.

As defined in La. Civil Code Art. 1524 (1870), the onerous donation (made on June 18, 1903) by the Caddo Parish Police Jury to the Plaintiff UDC was clearly one where the value of the object[s]

1

"manifestly exceed[ed] that of the charges imposed on the donee". See, Exhibit 1 (Page 218 which defines an onerous donation is one "that which is burdened with charges imposed on the donee"). Therefore, in exchange for the lawful/valid cause and consideration of the donation of $1000.00 and "the front plat" of court house square by the donor/transferor Caddo Parish Police Jury, the donee/transferee Plaintiff UDC accepted the lawful/valid charge to build the Confederate Monument on the said "front plat." Thus in 1906, the Plaintiff UDC dedicated its Confederate Monument at its' present site. The Confederate Monument honors the Confederate soldiers who are classified as "Civil War veterans" under federal law pursuant to 38 U.S.C. §1501.

Under La. Civil Code Art. 1526 (1870) "[i]nconsequence, the rules peculiar to donations inter vivos [such as the one found in La. Civil Code Art. 1556 (1870) which requires a notary public and two witnesses] do not apply to onerous and remunerative donations, except when the value of the object given exceeds by one-half that of the charges or of the service" the onerous donation was valid. See, Exhibit 1 (Page 218 of the La. Civil Code (1870)) and Exhibit 2 (Page 219 of the La. Civil Code (1870)). Thus, this onerous donation by the Caddo Parish Police Jury on the "front plat or portion of court house square" complies with all of the provisions of the La. Civil Code of 1870 and current law. In addition, the State of Louisiana has never filed suit whereby declaring that this said onerous donation of the said "front plat" by the donor/transferor Caddo Parish Police Jury to the donee/transferee Plaintiff UDC was in violation of the Louisiana State Constitutions of 1898, 1913, 1921, and the current 1974 one.

Furthermore in 1962, the Louisiana Legislature passed La. R.S. 41:§1323.4 (Sales, transfers or exchanges of public property by cities, towns, villages and police juries prior to twelve o'clock, noon, July 28, 1948). See, Exhibit 3. La. R.S. 41:§1323.4 reads as follows:

§1323.4: All sales, transfers or exchanges of public property made

2

> by cities, towns, villages and police juries made prior to twelve o'clock, noon, July 28, 1948 are hereby <u>validated, ratified and confirmed</u> unto the original purchasers or <u>transferees</u> and their successors in title, notwithstanding any informalities provided there was a valid consideration therefor. Added by Acts 1962, No. 205, §1. (Underlines added by undesigned counsel)

Therefore, under La. R.S. 41:1323.4 the transfer of the said "front plat" in front of the Caddo Parish Courthouse (in 1903 and soon enclosed by a fence by the Plaintiff UDC) was "validated, ratified and confirmed unto the original ... transferees [Plaintiff UDC]" in 1962. Even, the Defendant Caddo Parish Commission admits in its' website that "A very interesting fact about the land on which this monument sits is that it does not belong to the Commission but to the Daughters of the Confederacy, However, this small piece of land is surrounded by the Courthouse Square." See, Exhibit 3. Thus under the provisions of the laws and constitutions of the State of Louisiana and the Defendant Caddo Parish Commission admission in their website, the Plaintiff UDC is clearly the property owner of both the Confederate Monument and the enclosed "front plat".

Plaintiff UDC filed this case because of the viewpoint discrimination against it by the Defendants. Under Resolution No. 69, the Defendants "[seek] to compel private persons [i.e. Plaintiff UDC] to convey the government's speech" and the First Amendment may "constrain" government speech when the government itself is exercising viewpoint discrimination. See, *Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, No. 14-144, 576 U.S._____ (2015).

A violation of Plaintiff UDC's First Amendment rights occurred when the Defendants' ordered the immediate removal of the Plaintiff UDC's privately owned Confederate Monument from its' private property without the Defendants' content-based restrictions being narrowly tailored to serve a compelling government interest. See, *Cornelius v. NAACP Legal Defense & Ed. Fund, Inc.*, 473 U.S. 788, 800 (1985). Furthermore, when Defendants stated in Resolution No. 69 that, "the Confederate

Monument currently on the lawn of the Caddo Parish Courthouse serves as an object of division and a painful reminded of racial inequities locally and nationally" they engaged in viewpoint discrimination against the Plaintiff UDC . Restrictions based on viewpoint are also prohibited under the First Amendment's Free Speech Clause. See, *Carey v. Brown*, 447 U.S. 455, 463 (1980). In addition, the Defendants' Resolution No. 69 lacks a rational historical basis when they justified the removal of the Confederate Monument because it "serves as an object of division and a painful reminder of racial inequities locally and nationally." See, Exhibit 4. For example, the former slave and American educator Dr. Booker T. Washington spoke at the Caddo Parish Courthouse Square on October 4, 1911. In his speech he neither condemned the Confederate Monument nor the soldiers of the Confederacy; and he further never spoke of the Confederate Monument as being a representation of African slavery. See, Exhibit 5. Thus, the Defendants have provided no historical evidence to support a rational basis for ordering the removal of the Confederate Monument from the Plaintiff UDC's private property.

    In the instant matter Plaintiff UDC is seeking injunctive relief to order a halt to the removal of the Confederate Monument from its' private property based on the evidence that it will satisfy all four-prong test for this Honorable Court to order a Preliminary Injunction: (1) whereby there is a substantial likelihood that Plaintiff UDC will prevail on the merits; (2) the removal of the Confederate Monument will cause the Plaintiff UDC to suffer irreparable harm because it will have to pay over a quarter of a million dollars for removal and the said monument is fragile; (3) the Plaintiff has proof that the threatened injury clearly outweighs the damage of the proposed injunction to the Defendants; and (4) because the fact that the Confederate Monument has been in place on the Plaintiff UDC's private property for over one hundred years is clear evidence that said monument is not adverse to the public interest. See, *Planned Parenthood Ass'n of Hidalgo Cty, Tex., Inc. V. Suehs*, 692 F.3d 343, 348 (5th Cir. 2012); *accord Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974).

**LEGAL ARGUMENT**

**I. Introduction to the Legal Argument**

To prevail in the instant matter and obtain a Preliminary Injunction in order to halt the removal of the Confederate Monument from the private property of the Plaintiff UDC, it must satisfy a four-prong test: (1) substantial likelihood that plaintiffs will eventually prevail on the merits; (2) a showing that plaintiffs will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to plaintiff outweighs whatever damage the proposed injunction may cause the opposing parties; and (4) a showing that the injunction, if issued, would be be adverse to the public interest. See, *Planned Parenthood Ass'n of Hidalgo Cty, Tex., Inc. V. Suehs*, 692 F.3d 343, 348 (5th Cir. 2012); *accord Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974).

Furthermore, the Defendants' reliance on La. Civil Code Art. 1536 (1870), La. Constitution of 1898, Art. 58, and the current La. Civil Code Art. 1541 are inapplicable in the instant matter. For pursuant to La. R.S. 41:§1323.4 (Sales, transfers or exchanges of public property by cities, towns, villages and police juries prior to twelve o'clock, noon, July 28, 1948), the onerous donation by the donor/transferor Caddo Police Jury to the donee/transferee Plaintiff UDC was ratified by law in 1962. And the Defendant Commission's website already admits that the Plaintiff UDC owns the land underneath the Confederate Monument.

The common law doctrine of laches clearly apply to the Defendants' belated (well over one hundred years!) claim of property ownership underneath the Confederate Monument. In everyday language the doctrine of laches refers to "sleeping on one's rights" especially when the Defendants knew that the Plaintiff UDC has owned the said "front plat" since 1903. See, *Petrella v.*

*Metro-Goldwyn-Mayer, Inc.*, 572 U.S. __ (2014).[1]

In the instant matter the common law doctrine of laches requires proof by a preponderance of the evidence in a two-prong test: (1) The Defendants unreasonable and inexcusable delay in asserting their claim; and (2) Since all of the witnesses have died and the events took place more than one hundred fourteen years ago, Plaintiff UDC will suffer material prejudice as a result of the Defendants' unreasonable and inexcusable delay in asserting their claims of ownership. "In determining whether laches applies, a court must consider and weigh "all the pertinent facts and equities,"" which includes the one hundred fourteen year delay, the seriousness of the prejudice because all of the witnesses are dead and so are their children, and the reasonableness that the Defendants have asserted their claims to property ownership in 2017 (despite admitting in their current website that the Plaintiff UDC owns the said property given to it in 1903).[2] Since the Defendants have offered no reason for their unreasonable and inexcusable delay, the Defendants have waived any affirmative defense of reasonableness and excusable delay. The Plaintiff is materially prejudiced since the Defendants raise their claim of ownership for the first time in 2017.

**A. The Plaintiff UDC's has a substantial likelihood that it will prevail on the merits of**

---

[1] An unreasonable and prejudicial delay in commencing suit can hit a plaintiff where it matters most – the ability to enjoin infringing conduct, deprive a defendant of profits attributable to its alleged infringement and, indeed, meet its burden of proving infringement. Thus, laches is still a contender that should be considered when evaluating a claim of copyright infringement." Edwin Komen and Dylan Price, *Intellectual Property Law Blog: Up-to-date Information on Intellectual Property Law*, "Laches, Statutes of Limitations and Raging Bull: The Supreme Court Re-Emphasizes The Pitfalls Of Delay In Copyright Cases," July 7, 2014, https://www.intellectual propertylawblog.com/archives/laches-statutes-of-limitations-and-raging-bull-the-supreme-court-re-e mphasizes-the-pitfalls-of-delay-in-copyright-cases, Accessed November 21, 2017.

[2] Bart Starr, Dispute Advisory Litigation Insights, "Laches: The Federal Circuit Sheds New Light on an Old but Still Vital Patent Defense," Spring 2016, http://www.willamette.com/ insights_journal/16/spring_2016_4.pdf, Accessed November 21, 2017.

**the case.**

Plaintiff clearly owns the land underneath the Confederate Monument according to the laws of the State of Louisiana. The Defendants' Resolution No. 69 clearly states their viewpoint discrimination as their reason for ordering the removal of the Confederate Monument from Plaintiff UDC's private property: Resolution No. 69 states, "the Confederate Monument currently on the lawn of the Caddo Parish Courthouse serves as an object of division and a painful reminder of racial inequities locally and nationally" which is not content neutral as required by the First Amendment of the U.S. Constitution. Furthermore, Resolution No. 69 states no rational basis for th Defendants' order to remove Caddo Parish employees to remove the Confederate Monument nor is it narrowly tailored. In addition, the Defendants rejection of the recommendation of their appointed Citizens Advisory Committee and evidence of the "heckler's veto" exhibited by various opponents of the Confederate Monument both provide no rational basis for the Defendants' order for removal. See, Doc. 12-2, 12-3, and 12-6.

As for the Plaintiff UDC's Fifth Amendment claim, Resolution No. 69 provides no taxpayer funding for the removal of the Confederate Monument. Dismantling, removal, and reassembly of the Confederate Monument will cost the Plaintiff UDC $577,050 (See, Doc. 12-7). Not only forcing the Plaintiff UDC to pay for the said removal is in violation of the Takings Clause of the Fifth Amendment, the dismantling of a fragile work of art will diminish the value of it to near worthlessness. Dismantling the fragile Confederate Monument by unskilled laborers serves only to destroy a priceless work of art: akin to the removal of a 1930 Duesenberg Model J (an expensive classic luxury automobile) whereby Caddo Parish employees use blow torches to take it apart; and then to reassemble it (by unskilled welders) in another location. The Defendants admit to their desire to dismantle the Confederate Monument whereby the Plaintiff UDC will suffer a deprivation of the value of this said artwork. Thus, the removal of the Confederate Monument clearly violates the Takings Clause of the Fifth Amendment;

and the Defendants have graciously provided their proof in Defendants' Doc. 12-7.

And as for its' violation of its' Fourteenth Amendment by the Defendants, Defendants' Resolution No. 69 provides no due process or equal protection for the Plaintiff UDC. The plain wording of Resolution No. 69 clearly shows that the Defendants discriminate against the Plaintiff without affording it an opportunity to appeal their decision. Furthermore, Resolution No. 69 orders Caddo Parish employees to act immediately when it comes to the removal of the Confederate Monument from Plaintiff UDC's private property. Therefore, the Plaintiff UDC has no timely avenue to appeal Resolution No. 69 which violates not only due process; but the equal protection of the law as afforded by the Fourteenth Amendment. Thus, in all instances Plaintiff will likely prevail on its' First, Fifth, and Fourteenth Amendment claims against the Defendants; and which satisfies the first prong of the test.

**B. The Plaintiff UDC's shows that it will suffer irreparable injury unless the injunction issues.**

In the instant matter, Resolution No. 69 orders Caddo Parish employees to act immediately when it comes to removing the Confederate Monument. Furthermore, the Defendants have conceded that its' removal and reassembly will cost the Plaintiff UDC $ 577,050.00 because Resolution No. 69 does not provide taxpayer funding for it. See, Exhibit 5 (Originally Doc. 12-7) Also, the Confederate Monument has stood on the Plaintiff UDC's property since 1905; and any disassembly of the Confederate Monument will destroy the monetary value of the fragile artwork. Furthermore, the Confederate Monument stands on the Court House Square which is on the National Register of Historic Places. The Defendants have not provided evidence that the removal of the Confederate Monument does not violate federal law which requires that "[p]roperties listed in the National Register should be moved only when there is no feasible alternative for preservation. When a property is moved, every effort should be made to reestablish its historic orientation, immediate setting, and general

environment." See, 36 C.F.R. § 60.14 (Changes and revisions to properties listed in the National Register). The Defendants have presented no evidence of their compliance with federal law. Therefore if no Injunction prevents its' removal, the Plaintiff UDC will suffer irreparable harm when the removal of the Confederate Monument would cost it over a quarter million dollars; and permanently damage its' fragile piece of art. And when the Defendants have provided no evidence of their compliance with 36 C.F.R § 60.14 which is further evidence of irreparable harm to the Plaintiff UDC if no Injunction prevents the removal of the Confederate Monument; and this satisfies the second prong of this test.

**C. The Plaintiff UDC's shows that the threatened injury to it outweighs whatever damages the proposed injunction may cause the opposing parties.**

The Confederate Monument has sat on Plaintiff UDC's enclosed property since 1905 (dedicated in 1906). The Defendants have provided no evidence of threatened injury should the Confederate Monument remain in its' present location. However, the removal of the Confederate Monument will cost the Plaintiff UDC over a quarter of a million dollars. Compare this to the zero costs to the Defendants for the removal of the Confederate Monument. Thus, an Injunction prohibiting the removal of the Confederate Monument would prevent a threatened injury to the Plaintiff UDC itself; and this finding satisfies the third prong of this test.

**D. The Plaintiff UDC's shows that the injunction when issued would not be adverse to the public interest.**

The Confederate Monument has sat on Plaintiff UDC's enclosed property since 1905 (dedicated in 1906). The Defendants have provided no evidence that should the Confederate Monument remain in its' present location there would be an adverse impact on the public interest. An adverse impact would be the Defendants having the authority to stifle the free speech of a private property owner in violation of the property owner's First Amendment rights. Resolution No. 69 presupposes that the

9

Defendants have the authority to regulate a private property owner's rights to freedom of expression by cloaking their authority under "government speech". Furthermore, Resolution No. 69 provides no Fifth nor Fourteenth Amendment protections. Thus, this deprivation of First, Fifth, and Fourteenth Amendment rights by the Defendants have an adverse impact on the public; and this finding satisfies the fourth prong of this test.

## CONCLUSION

For the foregoing reasons, this Honorable Court should find for the Plaintiff UDC.

Respectfully Submitted:

\\Dick "Dave" Knadler\\

_____
Dick "Dave" Knadler, Bar Roll #27829
3223 First Street
Mansfield, Louisiana 71052
(318) 925-1178
dknadler@hotmail.com

## CERTIFICATE

I hereby certify that a copy of the above and foregoing has been served upon all attorneys of record in either the U.S. Mail or electronically this 27th day of November, 2017.

Respectfully Submitted:

\\Dick "Dave" Knadler\\

_____
Dick "Dave" Knadler, Bar Roll #27829