## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

| | |
|---|---|
| SHREVEPORT CHAPTER #237 OF THE UNITED DAUGHTERS OF THE CONFEDERACY | CASE NUMBER: 17-CV-01346 |
| Plaintiff, | JUDGE: ROBERT G. JAMES |
| VERSUS | |
| THE CADDO PARISH COMMISSION, STEVEN JACKSON, President Caddo Parish Commission and Caddo Parish Commissioner District 3, LYNDON B. JOHNSON, Caddo Parish Commissioner District 2, MATTHEW LINN, Caddo Parish Commissioner District 4, JERALD BOWMAN, Caddo Parish Commissioner District 5, LYNN D. CAWTHORNE, Caddo Parish Commissioner District 6, STORMY GAGE-WATTS, Caddo Parish Commissioner District 7, LOUIS JOHNSON, Caddo Parish Commissioner District 12 | MAGISTRATE JUDGE: MARK L. HORNSBY |
| Defendants. | |

| | |
|---|---|
| **SHREVEPORT CHAPTER #237 OF THE UNITED DAUGHTERS OF THE CONFEDERACY,** | |
| **Plaintiff,** | |
| **– Versus –** | |
| **PARISH OF CADDO, et al.** | CIVIL RIGHTS ACTION 42 U.S.C. § 1983 |
| **Defendants.** | DECLARATORY RELIEF & INJUNCTIVE RELIEF & JURY DEMAND |

---

### FIRST-AMENDED COMPLAINT

---

## I. INTRODUCTION

1.  This is an action pursuant to 42 U.S.C.§§ 1983 and 1988, for a declaratory judgment, injunctive relief, nominal damages, punitive damages, and attorney's fees to redress defendants' violations of plaintiff's rights as protected by of the First, Fifth, and Fourteenth Amendments of the U.S. Constitution when the defendants voted to remove a monument from the private property owned by the plaintiff. The policy complained of herein is the Caddo Parish Commission Resolution No. 69 of 2017 ("Resolution No. 69). Pursuant to Resolution No. 69, a majority of the Caddo Parish Commissioners voted to remove a monument owned by the plaintiff from its' personal property on October 19, 2017.  Dedicated in 1906, the said monument is named the Caddo Parish Confederate Monument ("Confederate Monument").  The Confederate Monument sits on two parcels of private property (a 400 square foot parcel more-or-less owned by the plaintiff since 1903) that is surrounded by the area known as the Caddo Parish Courthouse grounds on the north side of the Caddo Parish courthouse building.  In 2013, plaintiff applied to have this said monument registered on The National Register of Historic Places.  In 2014, the National Park Service approved the plaintiff's application to have the said monument registered.  Pursuant to Resolution No. 69, these actions of the defendants are preventing plaintiff from exercising its' First Amendment Right to freedom of speech, by denying it the right to express its' views from its' personal property.  Furthermore under Resolution No. 69, the defendants are preventing the plaintiff's exercise of its' Fourteenth Amendment rights to equal protection and due process when the defendants denied the plaintiff's right to appeal the defendants' decision to violate the plaintiff's exercise of its' First Amendment rights guaranteed by the U.S. Constitution. Furthermore, plaintiff shows that the said monument is over one hundred (100) years old and sporadically vandalized by opponents of the Confederate Monument.  Therefore, it is in a

condition whereby its' removal would cause much irreparable damage to it.  Such injury, loss, or damages without compensation would be in violation of the plaintiff's Fifth Amendment rights guaranteed under the U.S. Constitution.  And finally, the removal of this historic U.S. veterans' monument by the defendants would cause an immediate and irreparable injury, loss, or damage will result to the plaintiff before it can be heard in opposition.  Thus, pursuant to the Federal Rules of Civil Procedure Rule 65 (Injunctions and Restraining Orders) plaintiff intends to seek an injunction in order to protect the Confederate Monument from irreparable injury, loss, or damages that would result from the defendants' actions to remove said monument from plaintiff's private property.

## II. JURISDICTION AND VENUE

2.  This Court has original jurisdiction over this action pursuant to 28 U.S.C.§§ 1331 and 1343.

3.  Venue is proper in this Court pursuant to 28 U.S.C. § 139 (b).

4.  Declaratory relief is authorized pursuant to 28 U.S.C. § 2201 and 28 U.S.C. § 2202.  A declaration of the law is necessary and appropriate to determine the respective rights and duties of the parties to this action.

## III. THE PARTIES

5.  Plaintiff Shreveport Chapter #237 of the United Daughters of the Confederacy ("Shreveport Chapter") is a non-profit corporation (or non-profit organization) presently residing in Shreveport, Louisiana with its' business address in Shreveport, Louisiana, within the jurisdiction of the Western District of Louisiana.

6.  Defendant Caddo Parish Commission, The Caddo Parish Commission (the "Commission") is the governing authority for the Parish of Caddo and is a political subdivision of the State of Louisiana. The Commission consists of twelve members called commissioners who are elected to

four-year terms from single member districts.  Under the provisions of *Louisiana Revised Statutes* 33:1271-1285, it enacts ordinances, sets policy and establishes programs in such fields as criminal and juvenile justice, highways and streets, sanitation, planning and zoning, public health and welfare, libraries, culture and recreational facilities, economic development and general administrative services, the Commission was at all relevant times directly liable for acts complained of herein due to the policies, practices, procedures and customs of its' Office of the President of the Caddo Parish Commission (and its' individual members who voted to remove a monument from the plaintiff's personal property on October 19, 2017).  Defendant Commission is further directly liable for acts complained of herein due to its enactment of its' decision which violates plaintiff's First and Fourteenth Amendment rights under the U.S. Constitution to express its' views from its' personal property and its' rights to equal protection and due process respectively. Also, removal of the Confederate Monument would cause such injury, loss, or damages without compensation that it would be in violation of the plaintiff's Fifth Amendment rights guaranteed under the U.S. Constitution. Defendant Commission (and its' predecessor the Caddo Parish Police Jury) had not been in existence for the requisite number of years required to own the said Shreveport Block 23 (i.e. "Courthouse Square") via acquisitive prescription until the mid-twentieth century. Defendant Commission maintains the right and power to sue and be sued.

## IV. THE CHALLENGED PARISH POLICY

7. On or about October 19, 2017 on Resolution No. 69 of 2017, a majority of the members of the Caddo Parish Commission voted to remove the Confederate Monument (without just compensation, without equal protection, and without due process) from the plaintiff's private property located on 502 Texas Street, Shreveport, Louisiana 71101.

## V. FACTUAL ALLEGATIONS

8.  Plaintiff is in good standing and is a non-profit corporation residing in Shreveport, Louisiana with a business address in Shreveport, Louisiana.  Plaintiff is part of a larger non-profit corporation the Louisiana Division United Daughters of the Confederacy ("UDC") which is in good standing in Louisiana with a business address in Baton Rouge, Louisiana.

9.  Plaintiff is part of one of the premier historical and heritage organizations dedicated solely to the purpose of honoring the memory of its' Confederate ancestors; protecting, preserving and marking the places made historic by Confederate valor; collecting and preserving the material for a truthful history of the War Between the States; recording the participation of Southern women in their patient endurance of hardship and patriotic devotion during and after the War Between the states; fulfilling the sacred duty of benevolence toward survivors and those dependent upon them; assisting descendants of worthy Confederate in securing a proper education; honoring the service of veterans from all wars as well as active duty military personnel and cherishing the ties of friendship among members of the UDC.  The UDC is patriotic Organization which honors and upholds the United States of America and respects its' flag.  In addition, the plaintiff does not associate with any racist or subversive individuals or groups who undermine the United States of America.

10. Plaintiff's organization are made up of women at least 16 years of age who are lineal or collateral blood descendants of men and women who served honorably in the Army, Navy, or Civil Service of the Confederate States of America, or who gave Material Aid to the Cause. Women who were adopted are eligible only through the bloodline of the biological parent. Also eligible are those women who are lineal or collateral blood descendants of members or former members of UDC. However no Confederate ancestor who took the Oath of Allegiance before April 9, 1865, shall be

eligible to be used for application for membership. If proof of further Confederate service is available, thereby nullifying the Oath of Allegiance, the ancestor shall be considered for approval.

11. Since Confederate war veterans are U.S. military veterans pursuant to Public Law 85-425, an act passed on May 23, 1958, plaintiff further shows that the Confederate Monument is a monument to U.S. war veterans too.

12. The plaintiff avers that the Caddo Parish Police Jury had not acquired ownership of the Caddo Parish Courthouse Squire via acquisitive prescription by 1907 (or later).

13. The plaintiff further avers that the Caddo Parish Police Jury or its' successor the named defendant possess no written instrument purporting to convey the ownership of the Caddo Parish Courthouse Square from Larkin Edwards (or his heirs) to the Caddo Parish Police Jury.

14. The plaintiff further avers that the Caddo Parish Police Jury had not acquired the ownership of the Caddo Parish Courthouse Square (otherwise known as Shreveport Block 23) by 1907 or later.

15. The plaintiff further avers that as a political sub-entity of the government of the State of Louisiana, the Caddo Parish Police Jury was dissolved and regenerated many times in the nineteenth century (and not one version of it was ever in existence for the continuous thirty (30) years needed in order to acquire any immoveable property through acquisitive prescription prior to 1907 or possibly late in 1951).

16. For the reasons stated earlier, plaintiff further avers that the said Caddo Parish Courthouse Square was not public property prior to 1907 or possibly later in 1951.

17. As evidenced by the Caddo Parish Police Jury minutes dated June 18, 1903, the plaintiff avers that the Caddo Parish Police Jury (which was not a "person" under the Louisiana Civil Code of 1870 and did not own the property contained in said Shreveport Block 23) had donated the land underneath the Confederate Monument to the plaintiff.

18. The plaintiff further avers that it acquired the property underneath the monument as a result of an onerous oral donation made by the Caddo Parish Police Jury in 1903.  Official Proceedings of the Session Held on June 18, 1903 which states in part, "...that monument association be given the front portion of the court house square as a site for the monument...and the front plat of the court house square be reserved for the purpose, which motion was unanimously adopted."

19. The plaintiff further avers that the Confederate Monument was worth $10,000.00 in 1905 (and this amount satisfied the requirements of an onerous donation between the plaintiff (a "person") and the Caddo Parish Police Jury (a "political entity"); and the Confederate Monument is worth $1,000.000.00 today.

20. In the first alternative, since the Caddo Parish Police Jury had not acquired legal title to the said Caddo Parish Courthouse Square from the heirs of the original property owner by 1907 (or later), the said Caddo Parish Courthouse Square was private property (and not public property); and thus either all or portions of it could be acquired by acquisitive prescription by plaintiff UDC.

21. Further in the first alternative, since the Caddo Parish Police Jury had not acquired legal title to the said Caddo Parish Courthouse Square by 1907 (or later), plaintiff had acquired ownership of the said Caddo Parish Courthouse Squire (which was private property in 1903) via acquisitive prescription because the plaintiff had adverse possession of said land for over thirty years.

22. In the second alternative, based off the wording of the Official Proceedings of the Session Held on June 18, 1903 which states in part, "...that monument association be given the front portion of the court house square as a site for the monument...and the front plat of the court house square be reserved for the purpose, which motion was unanimously adopted." the plaintiff further avers that the Caddo Parish Police Jury and the plaintiff had entered into a Bond for Deed ("BFD").

Whereby in exchange for $1,000.00 and be given a plot of land by the Caddo Parish Police Jury, the plaintiff would erect a monument.

23. Further in the second alternative, in reliance on this said BFD, plaintiff erected a monument on the said plot of land by 1905 within an enclosure (and dedicated the monument in 1906).

24. Further in the second alternative, as a result of the said BFD plaintiff detrimentally relied on it and erected the Confederate Monument.

25. Further in the second alternative, once the Confederate Monument had been erected in 1905, plaintiff avers that it had fulfilled its' obligation and the Caddo Parish Police Jury (and later its successor the Caddo Parish Commission) did not fulfill its' obligation to execute the legal instrument of conveyance for the plot of land underneath the said Confederate Monument.

26. In the third alternative in 2013, as the owner of the Confederate Monument and the property underneath it, plaintiff submitted an application to the National Park Service.  According to the National Park Service's National Register of Historic Places Registration Form (dated December 2, 2013) the Confederate Monument is described as the following:

> The Caddo Parish Confederate Monument is of statewide significance under Criterion A as one of four major Louisiana monuments representing what is known by historians as "the Cult of the Lost Cause." More specifically, these monuments are Louisiana's most important representations of the Memorial Period, or second phase (1883 to 1907), of the Civil War Commemorative Sculpture Movement. These monuments represent a significant physical reminder of the period: reflecting the introduction and presence of Civil War monument construction in Louisiana and the role women played in the memorial period. This is an example of Art as History. The Cult of the Lost Cause continued to dominate Southern cultural history in the early twentieth century, and is still alive and well today. The period of significance for this memorial is 1902-1963, as explained above."  Authorized by the National Historic Preservation Act on January 29, 2014, the National Register of Historic Places placed the Caddo Parish Confederate Monument on its' official list of the Nation's historic places worthy of preservation. As part of a nationwide program, the National Park Service's National Register of Historic Places coordinates and supports the public and private efforts to identify, evaluate, and protect America's historic and archeological resources.

27. Further in the third alternative, although not factually known and in the abundance of caution, the plaintiff further avers that there is a possibility that federal monies are attached to the Confederate Monument so any changes to it must allow the Advisory Council on Historic Preservation to comment on the project pursuant to the federal National Historic Preservation Act of 1966.  The original owners of the land the Caddo Indians had reserved the grounds where the Caddo Parish courthouse now stands to an American citizen named Larkin Edwards pursuant to a treaty with the United States government in the 1840s.  Under this treaty the U.S. government gave a significant amount of monies to the Caddo Indians; but Larkin Edwards' land was exempt from said purchase.  In addition there are no documents in the official records of the Caddo Parish courthouse which purports to show a conveyance from Larkin Edwards to Caddo Parish itself.  Thus, there is a remote possibility that federal monies are attached to the site of the Confederate Monument.

28. Further in the third alternative and for the reasons stated in the previous paragraphs 21 and 22, plaintiff further avers that there is a possibility of a private cause of action against the defendant pursuant to the federal National Historic Preservation Act of 1966.

29. Prior to voting for the removal of said Confederate Monument, plaintiff further shows that the Defendant Commission had appointed a Citizens Advisory Committee ("Advisory Committee") to make a recommendation to the Commission concerning the Confederate Monument.  After months of town hall meetings with the citizens of Caddo Parish (and the result reviewing hundreds of emails and comments from members of the public), the Committee recommended that the Commission should leave the Confederate Monument in place and to erect two additional monuments: one to Reconstruction and one to Civil Rights. .  However on September 18, 2017, the Commission rejected the Committee's recommendation.

30. For the reasons stated earlier and for the reasons stated in the previous said paragraph 24, plaintiff further shows that the defendant did not have a rational basis for ordering the removal of the Confederate Monument for plaintiff's private property in October, 2017; which violated the plaintiff's rights under the First, Fourth, and Fourteenth Amendments under the U.S. Constitution.

31. Plaintiff further shows that there was a related parallel action in state court in the First Judicial District of Caddo Parish styled *John E. Settle v. Caddo Parish Commission and United Daughters of the Confederacy, Shreveport Chapter 237*, Case. No. 603,137, 1st Judicial District, Parish of Caddo, Shreveport, Louisiana.

32. Plaintiff further shows that the plaintiff John E. Settle was asking the district court for a declaratory judgment over which defendant owns the property underneath the Confederate Monument.  Although the defendant United Daughters of the Confederacy, Shreveport Chapter 237 has asserted in its' *Answer* declaring itself to be the owner of said property, the other defendant Caddo Parish Commission has not.

33. Plaintiff further shows that subsequently to the filing of this said law suit, the plaintiff voluntarily dismissed the the matter styled *John E. Settle v. Caddo Parish Commission and United Daughters of the Confederacy, Shreveport Chapter 237*, Case. No. 603,137, 1st Judicial District, Parish of Caddo, Shreveport, Louisiana in 2017.

## VI. CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

(Pursuant to Caddo Parish Resolution No. 69 of 2017 the defendants' decision to order the plaintiff to remove the Confederate Monument  its' private property  is facially unconstitutional violations of the First Amendment, as applied to plaintiff)

34. Plaintiff realleges and reincorporates, as though fully set forth herein, each and every allegation contained above.

35. The aforementioned policy is unconstitutional under the First Amendment of the U.S. Constitution for the following reasons:

    A.    The defendant (who was not the owner of the said property prior to 1907 or later) does not have the lawful authority to order the plaintiff to remove the Confederate Monument from its' private property;

    B.    The policies are not narrowly tailored to achieve a significant government interest, and are unconstitutionally over broad because it violates a non-profit corporation (or non-profit organization) right to exercise free speech on its' private property;

    C.    The policies do not leave adequate alternative channels for communication;

    D.    The policies do not have a rational basis for its prohibition of the Confederate Monument.  The defendant's rejection of the Committee's recommendation is evidence of the defendant's lack of a rational basis for their unconstitutional order;

    E.    The policies have a chilling effect which potentially prohibits other individuals from exercising their rights to free speech such as displays of the American Flag on their private property as guaranteed under the First Amendment of the U.S. Constitution;

    F.    The policies potentially prohibits significant participation of religious groups because the defendants have exercised authority which can be used to regulate persons from displaying symbols of faith on their private property;

    G.    Defendant does not have a legitimate interest in regulating plaintiff's expressive activity or the activity of other persons who wish to exercise their First Amendment rights on their private property;

    H.    Defendant does not have a legitimate interest in regulating plaintiff's expressive activity on its' private property because there not evidence that the Confederate Monument (which is a U.S. war veterans memorial) symbolizes slavery; and

    I.    Defendant does not have a legitimate interest in regulating plaintiff's expressive activity on it's private property because the defendants have no safety reasons for ordering the removal of the Confederate Monument (which is a U.S. war veterans memorial).

**SECOND CLAIM FOR RELIEF**

(The defendants' actions to order the plaintiff to remove the Confederate Monument from its' private property is an unconstitutional violation of the Fourteenth Amendment of the U.S. Constitution, as applied to  plaintiff)

24.  Plaintiff realleges and reincorporates, as though fully set forth herein, each and every allegation

contained above.

25.  The aforementioned ordinances are unconstitutional as applied to plaintiff, for the following

reasons:

    A.    On October 19, 2017, and prior to the defendant's actions to order the removal of the Confederate Monument from the plaintiff's private property, an attorney for Caddo Parish named Donna Frazier told a member of the Shreveport Chapter that plaintiff could appeal the defendants' decision only if it "would have to retain an attorney and sue the parish" which is an unconstitutional requirement to appeal under the Fourteenth Amendment;

    B.    Defendant has not provided any means to guarantee the plaintiff rights to equal protection under the Fourteenth Amendment; and

    C.    Defendant has not followed any statute that allows them to take private property from the plaintiff whereby such action would irreparably injure, lose, or damage said plaintiff's private property in a manner consistent under the Fourteenth Amendment.

## THIRD CLAIM FOR RELIEF

(The defendant's actions to order the plaintiff to remove the Confederate Monument from its private property is an unconstitutional violation of the Fifth Amendment of the U.S. Constitution, as applied to plaintiff)

26.  Plaintiff realleges and reincorporates, as though fully set forth herein, each and every allegation

contained above.

27.  The aforementioned ordinances are unconstitutional as applied to plaintiff, for the following

reasons:

    A.    A removal of the fragile Confederate Monument (estimated value is $1,000,000.00 and it has numerous micro-fractures) would cause a potentially permanent damages to it which the Defendant Caddo Parish Commission has failed to consider.  Such damages to the fragile Confederate Monument would constitute a taking which is inconsistent with the plaintiff's Fifth Amendment rights;

    B.    Without an appraisal of the fair-market value of the fragile Confederate Monument (which is estimated to be about a million dollars and has numerous micro-fractures); and without the defendant's guarantee to pay for its needed repairs (after its' removal from its original site), the Defendant Caddo Parish Commission's order to

remove the plaintiff's Confederate Monument is in violation of plaintiff's Fifth Amendment rights because there is no just compensation to the plaintiff;

C.     Under its' aforementioned decision the defendant will not have to pay for the proper storage of the Confederate Monument after removal in violation of plaintiff's Fifth Amendment rights because there is no just compensation to the plaintiff;

D.     Under its' aforementioned decision the defendant will not have to reimburse plaintiff for the proper storage of the Confederate Monument after removal in violation of plaintiff's Fifth Amendment rights because there is no just compensation to the plaintiff;

E.     Under its' aforementioned decision the defendant would significantly diminish the value of the Confederate Monument since removal violates its' historical integrity and which can trigger a removal from the National Historic Registry; and this diminution monetary value due to an adverse impact on its' historical integrity is an unconstitutional taking in violation of the plaintiff's Fifth Amendment rights because there is no just compensation to the plaintiff; and

F.     Under its' aforementioned decision the defendant would destroy the Confederate Monument (which is a monument to U.S. war veterans) because there is no scientific study done prior to said removal which would ensure the safety of said monument (which has numerous micro-fractures throughout) which is an unconstitutional taking in violation of the plaintiff's Fifth Amendment rights because there is no just compensation to the plaintiff; and

G.     Under its' aforementioned decision the defendant is not require to purchase insurance policies (to include replacement value and terrorism coverage) in the event of the destruction of the said Confederate Monument (which is a monument to U.S. war veterans) because the said valuable monument is a work of art which is fragile due to numerous micro-fractures throughout which is an unconstitutional taking in violation of the plaintiff's Fifth Amendment rights because there is no just compensation to the plaintiff should the said monument be destroyed by the defendant.

## VII. PRAYER FOR RELIEF

WHEREFORE, plaintiff, having no adequate remedy at law, prays for the following:

1. That a preliminary injunction and permanent injunction be issued restraining and enjoining defendants and their employees and agents from enforcing or threatening to enforce the policy of the Defendant Caddo Parish Commission and its' members who voted for removal of the

Confederate Monument located on the plaintiff's private property in violation of the plaintiff's First, Fifth, and Fourteenth Amendment rights under the U.S. Constitution;

2. That a declaratory judgment be issued holding as the private property owners of the land underneath the Confederate Monument (due to its' fragility caused by numerous micro-fractures, destructive acts of vandalism, and due to erosion caused by weather) the defendant can not order the removal of said monument from the plaintiff's private property;

3. In the first alternative, that a declaratory judgment be issued holding that the defendant Caddo Parish Commission has breached a contract (i.e. terms of the "BFD") with the plaintiff whereby the defendant was supposed to execute the legal instrument necessary to convey ownership once the plaintiff erected the Confederate Monument (which is a memorial to U.S. war veterans);

4. In the second alternative, if the defendant does move said monument to U.S. war veterans that this Honorable Court order that the defendant conduct scientific studies and purchase insurance for the replacement value and terrorism insurance and purchase a suitable location (to place the U.S. war veterans memorial) prior to the removal of the said monument to U.S. war veterans;

5. That reasonable attorneys' fees, expenses and costs be awarded to plaintiff pursuant to 42 U.S.C. § 1988 and any other applicable provision of law;

6. In light of ordering the removal of a U.S. war veterans memorial that the defendant issue a suitable written apology to the plaintiff (and all U.S. war veterans) for ordering the removal of the Confederate Monument from plaintiff's private property;

7. That the plaintiff is seeking punitive damages;

8. That the plaintiff request a trial by jury (i.e. Jury Demand); and

9. That this Court grant all equitable and further relief to include punitive damages which the

    Court deems just and proper.

                                    Respectfully Submitted:

                                    //Dick "Dave" Knadler//

                                    Dick "Dave" Knadler (#27829)
                                    Law Office of Dick "Dave" Knadler, LLC
                                    3223 First Street
                                    Mansfield, LA 71052
                                    (318) 925-1178
                                    cell (318) 453-4758
                                    *Attorney for Plaintiff*