UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | |
|---|---|
| SHREVEPORT CHAPTER #237 OF UNITED DAUGHTERS OF THE CONFEDERACY | CIVIL ACTION NO. 17-1346 |
| VERSUS | JUDGE ROBERT G. JAMES |
| CADDO PARISH COMMISSION, ET AL. | MAG. JUDGE MARK L. HORNSBY |

**RULING ON APPEAL**

Before the Court is a "Motion for Reconsideration and Objections to Ruling Granting the Protective Order Filed By Defendant" [Doc. No. 62], submitted by Plaintiff Shreveport Chapter #237 of the United Daughters of the Confederacy ("UDC" or "Plaintiff"). The Court construes the motion as an Appeal of Magistrate Judge Hornsby's Memorandum Order [Doc. No. 59] granting a Motion for Protective Order in favor of Caddo Parish Commissioners Steven Jackson, Lyndon Johnson, Matthew Linn, and Stormy Gage-Watts ("the Commissioners"). For the following reasons, the decision of the Magistrate Judge is AFFIRMED IN PART and REVERSED IN PART.

**I.    Background**

Plaintiff claims ownership of a Confederate Monument and the small parcel of land upon which it sits in front of the Caddo Parish Courthouse. A majority of the members of the Caddo Parish Commission ("the Commission") voted in favor of a resolution to remove the monument from the courthouse grounds. By this action, Plaintiff seeks an injunction prohibiting Defendants from removing the monument, as well as monetary damages pursuant to 42 U.S.C. §

1983 for alleged violations of Plaintiff's rights under the First, Fifth and Fourteenth Amendments to the United States Constitution.

Pursuant to the abbreviated scheduling order issued in this matter, at the time this Appeal was filed the discovery deadline was April 9, 2018.[1] [Doc. No. 50] Prior to expiration of that deadline, Plaintiff issued deposition notices to the four Commissioners who voted in favor of removing the monument. The Commissioners responded with a Motion for Protective Order [Doc. No. 53], seeking to prohibit Plaintiff from taking their depositions. The Magistrate Judge granted the Motion for Protective Order, holding the Commissioners are protected by "legislative privilege," and reasoning in pertinent part as follows:

> The parties' briefs suggest that Plaintiff seeks to inquire about the motives and thought processes of the four individual Commissioners in voting for the resolution to remove the Confederate Monument. The information has not been shown to be of more than limited relevance to the merits of this case, and the depositions would be the type of intrusive inquiry that the legislative privilege is designed to prevent. Denying these Commissioners the protection of the testimonial privilege could well dissuade these and other citizens from volunteering for such local legislative bodies and would hinder the free flow of discussion that is an integral part of the democratic process employed throughout this country.

[Doc. No. 59 at 3].

By this appeal, Plaintiff seeks reversal of the Magistrate Judge's Ruling, arguing as follows: (1) any statements the Commissioners made "in interviews with the local media" (which Plaintiff defines to include social media sites and personal blogs), are not protected by the legislative privilege [Doc. No. 62-1 at 2]; and (2) due to the time constraints imposed by the Court's abbreviated scheduling order, unless Plaintiff is allowed to depose the Commissioners, Plaintiff is unlikely to

---

[1] On April 11, 2018, the Court granted Plaintiff's motion to extend various deadlines, including the discovery deadline. [Doc. No. 69] The discovery deadline is now April 30, 2018. *Id.*

be able to enter the Commissioners' statements to the media into evidence at trial, as the statements "could possibly remain hearsay and inadmissible." *Id.* at 5-6.

## II. Standard of Review

The Magistrate Judge's Ruling on the Commissioners' Motion for Protective Order was made under the referral authority of 28 U.S.C. § 636. Section 636 provides in pertinent part: "[A] judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court. . . . A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." *Id.* at § (b)(1)(A); *see also* Fed. R. Civ. P. 72(a); Local Rule 74.1(A). Under this deferential standard, a magistrate judge's decision must be affirmed unless "on the entire evidence . . . [the court] is left with a definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948); *Hooker v. Campbell*, 2017 WL 5013579, * 2 (W.D.La.).

## III. Analysis

### A. Objection No. 1

Plaintiff's first objection asserts the Magistrate Judge "abused its' [sic] discretion" by ruling that statements made by the Commissioners "in interviews with local media" are protected by the legislative privilege. [Doc. No. 62-1 at 2]. Plaintiff argues the Commissioners' statements to the media "are political in nature rather then [sic] legislative in function," and therefore, those statements are not privileged. *Id.* Accordingly, Plaintiff contends the Commissioners failed to meet their burden and show their testimony is protected by the legislative privilege, and therefore the Magistrate Judge's Ruling to the contrary is clearly erroneous and contrary to law.

The Speech or Debate Clause of the United States Constitution provides "for any Speech or Debate in either House, [the Senators and Representatives] shall not be questioned in any other Place." U.S. Const., Art. I, § 6. The Supreme Court has held the Clause provides an evidentiary privilege "against inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts."[2] *U.S. v. Gillock*, 445 U.S. 360, 366-67 (1980); *see also Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 503 (1975) ("We reaffirm that once it is determined that Members [of Congress] are acting within the 'legitimate legislative sphere' the Speech and Debate Clause is an absolute bar to interference."). The Supreme Court has given the protections of the Speech and Debate Clause a "practical rather than a strictly literal reading." *Hutchinson v. Proxmire*, 443 U.S. 111, 124 (1979) ("[T]he Court has given the Clause a practical rather than a strictly literal reading which would limit the protection to utterances made within the four walls of either Chamber. Thus, we have held that committee hearings are protected, even if held outside the Chambers; committee reports are also protected."); *see also Gravel v. United States*, 408 U.S. 606, 616 (1972).

Neither the Supreme Court nor the Fifth Circuit have directly addressed whether a legislative privilege exists in favor of state, regional, or local legislators. Although state, regional and local

---

[2]A related doctrine – "legislative immunity" – also arises from the Speech and Debate Clause of the United States Constitution. Legislative immunity provides absolute protection from liability when government officials take legislative actions and perform legislative duties. *See e.g. Gravel v. United States*, 408 U.S. 606, 624 (1972). Although state and local legislators are not granted legislative immunity under the Speech and Debate Clause of the United States Constitution, federal courts accord state and local legislators similar protection under the common law. *Supreme Court of Virginia v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 732 (1980); *Bogan v. Scott–Harris*, 523 U.S. 44, 53–54 (1998)*; Hernandez v. City of Lafayette*, 643 F.2d 1188, 1993 (5th Cir.1981). Legislative immunity is not an issue in this case, as the Commissioners have never been sued in their personal capacities. [*See* Doc. No. 1] And while the Commissioners were originally sued in their official capacities (the official capacity claims were subsequently dismissed by the Court), success on those claims would not have imposed liability on the Commissioners, as a judgment in a § 1983 lawsuit against an official in his official capacity imposes liability against the entity he represents. *See e.g. Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

legislators are not covered by the federal Constitution, district courts within this jurisdiction have extended similar protections to such legislators under the common law. Furthermore, in *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, the Supreme Court indicated in dicta that local legislators are protected by a similar privilege, although perhaps not as broad in scope. 429 U.S. 252 (1977). There, the Supreme Court examined whether the Village of Arlington Heights, a suburb of Chicago, violated the Equal Protection Clause by denying a zoning change that would allow for low-income, multi-family housing. *Id.* at 254. Noting a violation of the Equal Protection clause requires "[p]roof of racially discriminatory intent or purpose," the Court stated that such proof requires "a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Id.* at 265-66. After discussing various examples of non-testimonial evidence which might show discriminatory intent or purpose, the Court concluded, "In some extraordinary instances the members might be called to the stand at trial to testify concerning the purpose of the official action, although even then such testimony frequently will be barred by privilege." *Id.* at 268. While the Court did not identify what would constitute an "extraordinary circumstance," it noted "judicial inquiries into legislative or executive motivation represent a substantial intrusion into the workings of other branches of government," and "[p]lacing a decisionmaker on the stand is therefore 'usually to be avoided.'" *Id.* at 268 n.18 (quoting *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420 (1971)).

While there appears to be a consensus among district courts within this jurisdiction that the legislative privilege applies to state, regional and local legislators, the courts have reached different conclusions regarding the scope of the privilege. Some district courts find the privilege is absolute. *See e.g. Cunningham v. Chapel Hill, ISD*, 438 F.Supp.2d 718, 723 (E.D.Tex. 2006) (legislative

privilege protected members of the Board of Trustees from having to testify about their votes to dissolve their maintenance department). Others find the privilege is qualified. *See e.g. Perez v. Perry*, 2014 WL 106927, *2 (W.D.Tex.) (the legislative privilege for state legislators is qualified and can only be applied after balancing the interests of the party seeking disclosure against the interests of the party claiming the privilege). Courts following the "qualified privilege" approach conduct a balancing test by assessing the following five factors:

> (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the "seriousness" of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

*Id.*

Again, Plaintiff contends it should be allowed to depose the Commissioners with regard to their statements to the media. [Doc. No. 62-1 at 2]. According to Plaintiff, the Commissioners have made "inflammatory" statements to the media and on blogs that "push [their] views," and are intended "to raise their supporters *already* heightened negative feelings toward the Caddo Parish Confederate Monument . . . and UDC." *Id.* at 3. Plaintiff contends such statements are "political and non-legislative in manner" and therefore are not protected by legislative immunity. *Id.*

In support of its argument, Plaintiff has submitted an invitation from Commissioner Johnson, appearing in the August 31, 2017 issue of the *Shreveport Sun*, which reads in pertinent part as follows:

The Confederate Monument Must Go

> Please join me and the Caddo Parish Commissioners as we discuss the future of the Confederate Monument at the Caddo Parish Courthouse.

> The meeting is scheduled for 2:00 p.m. on Tuesday, September 5 in Government Place's 1st floor Chamber.
>
> We need your voices to be heard.

[Doc. 55-2] Plaintiff does not discuss how or why this invitation is inflammatory or political in nature, rather than legislative, but merely attaches a copy of the invitation to its brief.

In response, Defendant argues this evidence merely constitutes an invitation to citizens to voice their opinions during a Commission Long Range Planning Committee Meeting. [Doc. 56 at 4] According to Defendant, "This committee is a subcommittee of the legislative body and the committee took legislative action at its meetings."[3] *Id.* Defendant concludes "an invitation to attend a meeting of a legislative subcommittee that takes legislative action" is clearly a legislative function. *Id.*

With regard to Commissioners Matthew Linn and Stormy Gage-Watts, Plaintiff submits two newspaper articles recapping events occurring at Caddo Commission meetings. [Doc. No. 55-7]. As Defendant correctly points out, the statements appearing in the articles submitted by Plaintiff which are attributed to the foregoing Commissioners appear to be statements made at the Commission meeting in connection with those Commissioners' votes.

The Court finds the legislative privilege applies to the testimony Plaintiff seeks from Commissioners Johnson, Linn and Gage-Watts, as any inquiry into the above-referenced statements and topics would necessarily inquire "into acts that occur in the regular course of the legislative process and into the motivation for those acts." *Gillock* at 366-67. The Court additionally agrees with the findings of Magistrate Judge that "[t]he information has not been shown to be of more than

---

[3] Defendant submits the Minutes of the September 5, 2017 meeting in support. [Doc. 56-1].

limited relevance to the merits of this case, and the depositions would be the type of intrusive inquiry that the legislative privilege is designed to prevent." [Doc. No. 59 at 3]. Further, the Court agrees that "denying these Commissioners the protection of the testimonial privilege could well dissuade these and other citizens from volunteering for such local legislative bodies and would hinder the free flow of discussion that is an integral part of the democratic process employed throughout this country." *Id.* Accordingly, the Ruling of the Magistrate Judge as it pertains to Commissioners Johnson, Linn and Gage-Watts is AFFIRMED.

Finally, Plaintiff cites the Court to certain blog posts found on Commissioner Jackson's webpage. [Doc. No. 55-1; *see also* Doc. 56-3 at 3] One of the blog posts, dated December 11, 2017, generally discusses the Court's Ruling dismissing the Caddo Parish Commissioners "named in their individual capacity."[4] *Id.* The blog entry additionally contains the following paragraph:

> "I am pleased with Judge James agreeing to dismiss individual commissioners who were singled out in the suit. The act of suing in such manner was completely frivolous and unnecessary to the merits of the case. I have complete confidence that our legal team will succeed on the merits of land ownership and our ability to move a symbol of hate and insurrection from in front of our local institution of justice."

*Id.*

Another blog post of Commissioner Jackson, dated January 26, 2018, generally discusses the Court's Ruling denying Plaintiff's Motion For Preliminary Injunction. That entry additionally contains the following paragraph:

> "Today's decision is a dose of justice which clears the path for Caddo Parish to turn the page on this point in history. My hope and prayer is that we will use our tomorrows not discussing "tearing down history" but opportunities to build bridges for a more inclusive, just, and tolerant community. We should not allow history to

---

[4]As previously noted, no Commissioner has ever been sued in his or her individual capacity in this matter.

define us by the horror and injustices of statues that paid homage to "The Cult of the Lost Cause." We should instead allow history to define us as [a] place who accepts all human beings regardless of the race, religion, sex, sexual orientation, age, and ethnicity as God created us."

[Doc. 55-1 (quotation marks appearing in original); *see also* Doc. 56-3 at 4] Although both paragraphs set forth above appear on the blog in quotation marks, no author is identified. However, as the statements appear on Commissioner Jackson's blog, the Court presumes for purposes of this Appeal that he is the author of those statements.

With regard to these blog entries, Defendants contend:

Looking at these posts under the qualified legislative immunity factors, they are: 1) not relevant as they are posts about the litigation; 2) the posts themselves are the best evidence of their contents so "other evidence" is readily available. Plaintiff alleges there has been no "chilling" effect on the legislators. Well, they have not yet been forced to testify. Chilling is not an issue unless the commissioners are forced to testify. Looking at the blog posts, there is nothing else to question Commissioner Jackson about except that which is privileged. There is no evidence, whatsoever, that commissioners have made statements regarding the motives for their votes outside the realm of their legislative capacities.

[Doc. No. 56 at 5].

The Court finds Defendant has failed to carry its burden with regard to the statements purportedly made by Commissioner Jackson on his blog. *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir.2001) ("A party asserting a privilege exemption from discovery bears the burden of demonstrating its applicability.") To be protected by the legislative privilege, the statements must be made "in the regular course of the legislative process." *Gillock* at 366-67 (quoting *U. S. v. Helstoski*, 442 U.S. 477, 489 (1979)). In *United States v. Brewster*, 408 U.S. 501, 512 (1972) the Supreme Court examined the legislative privilege asserted on behalf of a United States Senator. The Court stated the following in examining the boundaries of its protection:

> A legislative act has consistently been defined as an act generally done in Congress in relation to the business before it. In sum, the Speech or Debate Clause prohibits inquiry only into those things generally said or done in the House or the Senate in the performance of official duties and into the motivation for those acts.
>
> It is well known, of course, that Members of the Congress engage in many activities other than the purely legislative activities protected by the Speech or Debate Clause. These include a wide range of legitimate 'errands' performed for constituents, the making of appointments with Government agencies, assistance in securing Government contracts, preparing so-called 'news letters' to constituents, news releases, and speeches delivered outside the Congress. The range of these related activities has grown over the years. They are performed in part because they have come to be expected by constituents, and because they are a means of developing continuing support for future elections. Although these are entirely legitimate activities, they are political in nature rather than legislative, in the sense that term has been used by the Court in prior cases. But it has never been seriously contended that these political matters, however appropriate, have the protection afforded by the Speech or Debate Clause. Careful examination of the decided cases reveals that the Court has regarded the protection as reaching only those things 'generally done in a session of the House by one of its members in relation to the business before it,' *Kilbourn v. Thompson*, *supra*, 103 U.S., at 204, or things 'said or done by him, as a representative, in the exercise of the functions of that office,' *Coffin v. Coffin*, 4 Mass. 1, 27 (1808).

*Id.* at 512-13. The Court finds the blog entries at issue in this matter are the functional equivalent of "'news letters' to constituents," which the Supreme Court suggested are political matters not protected by the Speech and Debate Clause. The Court has found no indication in the jurisprudence that the legislative privilege provided by the common law would provide greater protection than that afforded by the United States Constitution. Accordingly, the Court finds Defendant has failed to carry its burden and show the statements made by Commissioner Jackson on his web blog are protected by the legislative privilege. While the Court sees little relevance of this line of inquiry to the merits of this case, the Court finds the statements are not protected on the grounds argued.[5]

---

[5]While there may be other grounds for a protective order with regard to Commissioner Jackson, none have been argued to this Court.

Accordingly, that portion of the Magistrate Judge's Ruling granting a protective order as to the statements made by Commissioner Jackson on his blog is REVERSED.[6]

### B. Objection 2

As best this Court can determine, Plaintiff's second objection is that due to the time constraints imposed by the Court's abbreviated scheduling order, Plaintiff will likely be unable to enter the Commissioners' statements to the media into evidence at trial, as the statements "could possibly remain hearsay and inadmissible" unless Plaintiff is allowed to depose the Commissioners. [Doc. 62-1 at 5-6]. According to Plaintiff, depositions are the only method of discovery that will allow it to obtain the necessary evidence to admit these statements at trial, as other methods of discovery would take too long under the time constraints imposed by the Court's abbreviated scheduling order. *Id.* The Court finds this argument to be without merit. As set forth in Section III(A) of this Ruling, the Court finds the statements identified by Plaintiff and attributed to Commissioners Johnson, Linn and Gage-Watts are protected by the legislative privilege, and therefore Plaintiff is prohibited from deposing the foregoing Commissioners about those statements. Furthermore, deposing the Commissioners about the statements is unlikely to cure Plaintiff's hearsay problem, as deposition testimony, by definition, constitutes hearsay. *See* Fed. R. Evid. 801(c). To the extent Plaintiff intends to submit such statements into evidence at trial, it will have to find an appropriate

---

[6]Plaintiff additionally submits a screenshot with a headline that reads, "United Daughters of the Confederacy sues Caddo Commission to block removal of Confederate monument," which appears to be a video link dated October 20, 2017. [Doc. No. 55-1 at 3]. Plaintiff also submits a screenshot of a headline that reads "Lawsuit filed to block removal of Confederate monument," which also appears to be a video link dated October 20, 2017. [Doc. No. 55-3]. There are no articles included with the headlines, nor has Plaintiff provided any video, or even weblinks to same. Accordingly, the Court does not address these portions of the Exhibits submitted by Plaintiff.

exception to the hearsay rule.[7]

**IV.    Conclusion**

For the reasons set forth above, the Ruling of the Magistrate Judge is REVERSED with regard to that portion of the Ruling granting a protective order as to the statements made by Commissioner Jackson on his web blog. The Ruling is AFFIRMED in all other respects.

MONROE, LOUISIANA, this 26th day of April, 2018.

*(signature)*
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

---

[7]The Court notes in the same section of its brief, Plaintiff contends the Commissioners statements to the media "can be construed as statements against interest in this matter." [Doc. No. 62-1 at 5]. If the statements are deemed to be "statements against interest" as set forth in Fed. R. Evid. 804, they will not be excluded by the rule against hearsay. *See* Fed. R. Evid. 804(a)(1); *id.* at § (b)(3).