UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

SHREVEPORT CHAPTER #237 OF THE       CIVIL ACTION NO. 17-CV-01346
UNITED DAUGHTERS OF THE
CONFEDERACY

VERSUS                               JUDGE JAMES

THE CADDO PARISH COMISSION, ET       MAGISTRATE JUDGE HORNSBY
AL

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

MAY IT PLEASE THE COURT:

Plaintiff Shreveport Chapter #237 of the United Daughters of the Confederacy's claims

against the Parish of Caddo should be dismissed, as Plaintiff does not own the land upon which

the monument sits and has no standing to make the claims.

**II.      Facts and Procedural Background**

On September 22, 2016, via Resolution No. 72 of 2016, the Caddo Parish Commission

("Commission") established a Citizen Advisory Subcommittee of its Long-Range Planning

Committee.  The purpose of this subcommittee was to review the issue of whether the Caddo

Parish Courthouse grounds were an appropriate location for the Confederate Monument.[1] The

subcommittee held several community meetings and reported to the Commission on August 17,

2017, recommending that two additional monuments be erected at the Caddo Parish

Courthouse and the Confederate Monument be maintained.[2] On October 19, 2017, the

Commission adopted Resolution No. 69 which authorizes the Parish Administrator to pursue all

legal means of removing the Confederate Monument from the Courthouse grounds.[3]

This Honorable Court took evidence in a hearing on Plaintiff's Motion for

---

[1]      Doc. 12-6
         .
[2]      Exhibit A to this Memorandum-Minutes of the of the Monument Advisory Committee submitted as Defendant's
         Answer to First Request for Production of Documents, March 12, 2018.

[3]      (Exhibit C) ) to Defendant's Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction. Doc. 12-4.

Preliminary Injunction on December 11, 2017.  After the hearing, the Court took the matter under advisement.  Subsequently, the Court denied the Plaintiff's Motion for Preliminary Injunction on January 26, 2018.  Plaintiff filed a Motion for Reconsideration of the Court's Denial of Preliminary Injunction February 6, 2018, which the Court denied on May 14, 2018.

**Law and Argument**

## I.        Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[4]  "When assessing whether a dispute as to any material fact exists, the Court considers 'all of the evidence in the record but refrains from making credibility determinations or weighing the evidence.'"[5] All reasonable inferences are drawn in favor of the nonmoving party, but a litigant cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions.[6] "A court ultimately must be satisfied that 'a reasonable jury could not return a verdict for the nonmoving party.'"[7]

"If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim."[8] The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists.[9] "The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial.[10]

---

[4]        *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[5]        *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008).

[6]        *Little,* 37 F.3d at 1075.

[7]        *Delta,* 530 F.3d at 399.

[8]        *Celotex*, 477 U.S. at 324.
[9]        *Id.*
[10]       *Celotex,* 477 U.S. at 325*; Little,* 37 F.3d at 1075.

## II.    Caddo Parish Owns Courthouse Square, Block 23

Plaintiff alleges that Caddo Parish does not and has not ever owned City of Shreveport Block 23, Courthouse Square.  This argument is not supported by the law and evidence.

### A.    Evidence that the Parish of Caddo Owns Courthouse Square in its entirety.

At the hearing on Plaintiff's Motion for Preliminary Injunction, expert witness, Dr. Gary Joiner, testified that Shreve Town Company could not have properly dedicated Block 23 as the public square, because it belonged to Larkin Edwards.  According to Dr. Joiner, the Caddo Indians gave Edwards a "floating grant" on the land sold to Shreve Town Company to be reserved wherever Edwards wished.  Edwards allegedly reserved Block 23 to annoy Henry Miller Shreve, a member of Shreve Town Company, because of enmity between the two; according to Dr. Joiner, Block 23 was never Shreve Town Company's to dedicate to public use.[11]  However, according to filings in Natchitoches and Caddo Parish, Larkin Edwards sold this floating grant to Shreve Town Company.[12]  Therefore, maps of Shreveport showing this area dedicated to public use and not reserved for private ownership conform to what is evidenced by the deeds.

Caddo Parish Police Jury Minutes show that the Police Jury started dealing with the ownership of the public square as early as 1846.  The June 2, 1846 Caddo Parish Police Jury minutes reflect that the Police Jury was considering erecting a new jail.  Apparently, a committee had been appointed to examine the title to the public square and reported as follows:  "From inquiry your Committee have been led to believe that the title vested in the Parish of Caddo to the lot of ground known as the public square is of too precarious and

---

[11]     Doc. No. 51 at pp 41-43.

[12]     Exhibit A to this memorandum; originally part of Defendant's Response to Subpoena Duces Tecum, delivered to Plaintiff at 4/4/2018 Deposition.

uncertain a character to justify the erection of any public building thereon."[13] In August of 1846

however, the Police Jury met, and the minutes reflect that a committee appointed to

investigate the title to the Public Square in and to the Parish of Caddo had "full conviction"

that the "Police Jury of said Parish has a full and complete right to use the Public Square for

the erection thereon of the public buildings as was originally designed by the Shreveport

Company in making the appropriation of said public square."[14]

The Police Jury Minutes of June 3, 1856 show that the Police Jury appropriated

$10,000.00 to build a courthouse and suitable offices for Caddo Parish upon the public square

in the city of Shreveport;[15] maps start showing the courthouse building on the property in

1857.[16]  January 3, 1860 minutes show that the Courthouse was finished and located on the

public square, as Ordinance No. 1215 was adopted allowing a committee to make changes to

the Clerk of Court's office, let a contract for grading of the square and making sidewalks

around it, constructing a cistern and placing gas fixtures.[17]  Finally, at the hearing on the

preliminary injunction, Plaintiff's expert, Dr. Gary Joiner, testified that courthouses have sat on

the public square since the 1850s and the square has consistently been maintained by Caddo

Parish since that time.[18]  This testimony is consistent with the Police Jury minutes.

### B.    Law supporting Caddo Parish's ownership of Block 23 in its entirety.

1)      The deeds, maps and United Title Opinion show that Block 23 has always been

dedicated as a public square within the City of Shreveport/Parish of Caddo, even if the

---

13      Exhibit B to this Memorandum at p. 72, originally part of Defendant's Response to Subpoena Duces Tecum, delivered to
         Plaintiff at 4/1/2018 Deposition.

14      Id at p.

15      Id. at p. 232

16      See United Title Opinion and Maps, Doc. 10-6 and 12-4, respectively.

17      Exhibit B to this memorandum at p. 281, originally part of Defendant's Response to Subpoena Duces Tecum, delivered to
         Plaintiff at 4/4/2018 Deposition.

18      Doc. No. 51 at p. 59.

dedication may not have been perfected until 1845.  As this Court recognized, other courts have found block 23 has been used for public purposes at least since 1846.[19] Therefore, Defendant contends that it has always owned this property by virtue of the public dedication.

       2)      Law of acquisitive prescription.

Acquisitive prescription is "a mode of acquiring ownership or other real rights by possession for a period of time."[20] To acquire possession, one must intend to possess as owner and must take corporeal possession of the thing;[21] that is, one must exercise physical acts of use, detention, or enjoyment over a thing.[22] The intent to possess as owner is presumed unless one began to possess in the name of and for another.[23] In the absence of title, one has possession only of the area actually possessed.[24]

Acquisitive prescription may be of ten or thirty years.  Ten year prescription requires: possession of ten years, good faith, just title, and a thing susceptible of acquisition by prescription.[25]  Thirty year prescription does not require just title or good faith.[26]

Based on the fact that the public square was platted and publicly dedicated by Shreve Town Company and that Shreve Town Company bought the reservation from Larkin Edwards and thus wholly owned it, the Parish had just title and good faith as stated in the 1846 minutes. The 1860 minutes show the earliest possession of the property and reference laying out of sidewalks and grading it.  Therefore, the Parish had acquired property by ten year prescription

---

[19]       Doc. 82 at p. 7, "*See also Akin*, 234 So.2d at 205."

[20]       La. Civ.Code art. 3446.

[21]       La. Civ.Code art. 3424.
.

[22]       La. Civ.Code art. 3425.

[23]       La. Civ.Code art. 3427.

[24]       La. Civ.Code art. 3426.

[25]       La. Civ.Code art. 3475.

[26]       La. Civ.Code art. 3486.

by 1856, but no later than 1870.  However, the worst case scenario is that the Parish acquired

the property by 1876, no later than 1890, pursuant to thirty year prescription.  Plaintiff has

previously argued that the Parish's possession was interrupted during the time that Louisiana

seceded from the Union.  However, as this Court has noted in its denial of Plaintiff's request to

reconsider of denial of Plaintiff's preliminary injunction, "once acquired, possession is retained

by the intent to possess as owner, even if the possessor ceases to possess corporeally."[27]

Furthermore, Plaintiff's expert testified that the Parish did not cease to possess the property

during the time of secession.[28]

     The only competing claim to the Parish's ownership is that of Plaintiff.  Plaintiff contends

that it received an "oral donation" of that portion from the Police Jury in 1903.  The "oral

donation" referred to is in the June 18, 1903 minutes of the Police Jury, which state:

>      The rules were suspended and Mr. W.H. Wise on behalf of the Daughters of the Confederacy made an earnest appeal for an appropriation of $1,000.00 for the confederate monument, at same time requesting that the monument association be given the front plat or portion of court house square as a site for the monument.
>      Moved by J. S. Young that the $1,000.00 be allowed and the front plat of court house square be reserved for that purpose, which motion was unanimously adopted.

     Louisiana law requires that donations inter vivos be made "by authentic act under the

penalty of absolute nullity, unless otherwise expressly permitted by law." [29] This requirement

was the same under La. Civil Code Art. 1536 (1870) at the time of this police jury meeting.

There is no act or paperwork that the plaintiff can produce, other than these minutes, to show

that the Police Jury ever conveyed the portion of Courthouse Square upon which the monument

sits to the Daughters of the Confederacy.  Further, the minutes state that the front plat is

**reserved** for the purpose of erecting the monument.  The request, as written in the minutes,

---

[27]      Doc. No. 82 at p. 8.

[28]      Doc. No. 51 at p. 59.

[29]      La. C.C.P. Art. 1541.

shows that the police jury was asked to give the property for that purpose but deliberately chose instead to only reserve it.  That language is not indicative of a conveyance of any kind.

Additionally, there is nothing to show that this alleged "oral donation" fits into any exception to the form required by the Civil Code.  In fact, the Louisiana Constitution as it existed at the time of the police jury's action, expressly prohibited donations of public property; the police jury could not have legally donated the property[30], and the Plaintiffs are not entitled to rely on any actions other than what the law clearly requires.

Plaintiff alleges that since the monument has sat on the property since 1906, it has acquired the property by acquisitive prescription.  However, it is well-settled law that private citizens cannot acquire property from the government via acquisitive prescription.  Third parties occupying lands that have been dedicated to public use cannot acquire title thereto because those lands are out of commerce and not subject to private or individual ownership.[31].

Plaintiff attempts to argue that the Courthouse Square may not belong to the Parish because United Title, which rendered an opinion on the ownership of the Courthouse Square in 2002, did not find any written conveyances to Caddo Parish.  However, the plat of the square from as far back as 1857 shows that the Lot 23 of the City of Shreveport has been designated for the Courthouse.[32]  Moreover, parish police juries have been charged with providing the parish courthouses since 1813, further showing that any courthouse would have been owned by the police jury for public benefit.[33]  Why else would Plaintiff have come to the Police Jury to request permission to erect its statute in front of the Courthouse?

---

[30]       La Constitution of 1898, Art. 58

[31]       *City of New Orleans v. Carrollton Land Company*, 60 So.2d 95 (1913); *Shreveport v. Frank C. Walpole*, 22 La. Ann. 526.

[32]       See United Title Opinion and Maps, Doc. 10-6 and 12-4, respectively.

[33]       L.S.A.-R.S. 33:4715 (Historical and Editorial Notes)

Indeed, this Court has already found that Plaintiff's arguments for ownership of the land upon which the Confederate Monument sits fail.[34]  For the foregoing reasons, Plaintiff cannot show that it has ownership of the land upon which the Confederate Monument sits.

### III.     Because the Parish Owns the Property upon which the Confederate Monument Sits, Plaintiff's Constitutional Claims fail.

As Defendant has shown, Plaintiff does not own the property upon which the Confederate Monument sits.  Governments have the right to allow the erection of monuments on their property, and in doing so, a government is attempting to convey a certain thought or feeling in those who will see the structure.  Government speech is exempt from First Amendment scrutiny.[35]  Following this logic, the 1903 police jury was attempting to convey a message by allowing the Daughters of the Confederacy to erect the Confederate Monument at the Courthouse.  The 2017 Parish Commission has the same right of government speech to authorize the monument's removal.

Therefore, they do not have an absolute right to free speech on Block 23.

Plaintiff has previously asserted that Defendant cannot raise government speech as a defense and cites *Matal v. Tam*, ____ U.S. _____, 137 S.Ct. 1744, 198 L.Ed.2d 366 in support of that assertion.  However, Tam involved the plaintiff objecting to the Lanham Act governing how he could trademark something he, the plaintiff, owned.  The case has no applicability here as government property is at issue.

To assert a violation of the 5th and 14th amendment, the Plaintiff has to show that it has been denied life, liberty or property and that the denial is without due process and just compensation.[36]  The Parish Commission is seeking removal of the Confederate Monument by

---

[34]     Document No. 82, pp. 4-8; Document No. 38, pp. 6-12.

[35]     *Pleasant Grove City v. Summum*," 555 U.S. 460, 464, 129 S.Ct. 1125, 172 L.Ed.2d 853 (2009)

[36]     See the following excerpt of this Court's opinion  in Document 38, pp. 14-15:
"*See Board of Regents v. Roth*, 408 U.S. 564, 577 (1972) (noting that a claimant asserting a property interest requiring Due Process under the Fourteenth Amendment must show more than a "unilateral expectation of it[ ]" and must "have a legitimate claim of entitlement to it."); *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City*,

all legal available means; it is authorized to have items removed from its public property.  The Plaintiff does not have an interest in the property upon which the confederate monument sits. Therefore, it has no right to block removal of the monument.

Additionally, if Plaintiff did have a property interest in the land upon which the monument sits, for there to be a constitutional violation, "it is necessary to ask what process the State provided, and whether it was constitutionally adequate."[37] "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner."[38] In the instant case, there was a public hearing held prior to the commission's vote on the resolution.  Plaintiff clearly had an opportunity to be heard.[39]

Further, the Caddo Parish Commission formed a Monument Advisory Committee which studied this issue for over a year prior to the passage of Resolution 69.  The president of United Daughters of the Confederacy #237 was a member of that advisory committee.[40] Clearly Plaintiff had adequate notice and opportunity to be heard on the issue of removing the monument.

## IV.    Conclusion

---

473 U.S. 172, 194-95 (1996) ("The Fifth Amendment does not proscribe the taking of [private] property; it proscribes taking without just compensation . . . the **property owner** cannot claim a violation of the Just Compensation Clause until it has used [a state procedure for seeking just compensation] and been denied just compensation)(citing *Hodel v. Virginia Surface Mining & Reclamation Assn., Inc.*, 452 U.S. 264, 297, n. 40 (1981); *see generally Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 467–68 (2009) (In its own forum, "[a] government entity has the right to speak for itself . . .. [I]t is entitled to say what it wishes, and to select the views that it wants to express.")12 (citations and internal quotation marks omitted); *see also Monumental Task Comm., Inc v. Foxx*, 157 F. Supp. 3d 573, 594 (E.D. La. 2016), *aff'd sub nom. Monumental Task Comm.*, 678 Fed. App'x 250 ("To state a cause of action under § 1983 for violation of the Due Process Clause, plaintiffs 'must show that they have asserted a recognized 'liberty or property' interest within the purview of the Fourteenth Amendment, and that they were intentionally or recklessly deprived of that interest, even temporarily, under color of state law.' . . . If there is no denial of life, liberty, or property, then the government is not required to provide due process.") (quoting *Doe v. Taylor Indep. Sch. Dist.*, 15 F. 3d 443, 450 (5th Cir. 1994)) (other citations omitted)."

37    *Bowlby v. City of Aberdeen*, 681 F.3d 215, 222 (5th Cir.2012) (quoting Zinermon v. Burch, 494 U.S. 113, 126, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990)).

38    *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

39    Doc. 12-3.

40    Doc. 51, pp. 20-22.

For the foregoing reasons, this Court should grant summary judgment in favor of the

Caddo Parish Commission, dismissing all of plaintiffs' claims at plaintiffs' cost.


Respectfully submitted,

OFFICE OF THE PARISH ATTORNEY
PARISH OF CADDO


BY:_____s/Donna Y. Frazier_____
Donna Y. Frazier, Bar Roll No. 24420
Parish Attorney
Henry M. Bernstein, Bar Roll No. 03011
Assistant Parish Attorney
Government Plaza
505 Travis Street, Suite 810
P. O. Box 1127
Shreveport, Louisiana 71163-1127
Telephone (318) 226-6947
Facsimile (318) 226-6974
ATTORNEYS FOR CADDO PARISH
COMMISSION


CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was served on all counsel of record in this matter via CM/ECF on May 31, 2018.


Dick "Dave" Knadler
Law Office of Dick "Dave" Knadler
3223 First Street
Mansfield, LA  71052


_____s/Donna Y. Frazier_____
OF COUNSEL