UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

SHREVEPORT CHAPTER #237 OF THE UNITED DAUGHTERS OF THE CONFEDERACY

CIVIL ACTION NO. 17-CV-01346

VERSUS

JUDGE JAMES

THE CADDO PARISH COMISSION, ET AL

MAGISTRATE JUDGE HORNSBY

**REPLY MEMORANDUM TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

In opposing Defendant's Motion for Summary Judgment, Plaintiff makes a series of arguments that are not supported by the evidence, are irrelevant, and/or include misstatements or omissions of facts. Nothing raised by Plaintiff shows that there is a genuine issue of material fact. Therefore, summary judgment should be granted for Defendant in this case.

I. **Defendant Erroneously Asserts that Larkin Edwards and His Heirs Own Block 23, Courthouse Square**

Plaintiff claims that the Parish cannot own Block 23, Courthouse Square, because it was part of a floating grant given to Larkin Edwards by the Caddo Indians and has never been transferred. Defendant has shown that Larkin Edwards deeded that grant of the property to Angus McNeil who deeded it to the Shreve Town Company. Plaintiff claims that Edwards nullified the sale to McNeil and never subsequently signed another act of sale. What Plaintiff fails to acknowledge is that in the document purporting to nullify the sale, Edwards acknowledges that sale has actually taken place and that the nullification is to correct an error in the instrument, i.e. changing the year of

sale from 1835 to 1836.  The document also states that Edwards would execute an Act of Sale "whenever he is legally required to do so."[1]

The initial sale was pursuant to the Louisiana Civil Code of 1825, which provided that a "sale is considered to be perfect between the parties, and the property of right is acquired to the purchaser with regard to the seller, as soon as there exists an agreement for the object and for the price thereof, although the object has not been delivered, nor the payment made."[2] The instrument of which Plaintiff speaks does three things within its four corners:  1) acknowledges that Larkin Edwards sold the property to Angus McNeil for $5,000.00, which was in fact paid; 2) acknowledges that the original instrument should have been dated 1836 instead of 1835; and 3) states Edwards' intention to ratify that sale <u>should it be necessary</u>.  Plaintiff wishes to couch this document as a nullification of the original sale.  There is nothing in the 1825 Civil Code or in case law that would have required him to do so.  This was merely a correction deed.  "It would seem that the very purpose of a correction deed is to admit mutual error and change the original instrument to conform to the true intent of the parties."[3] There is no issue of material fact regarding the sale of Block 23.

It was noted by the court in Akin v. Caddo Parish Police Jury that Block 23 was platted as the "Public Square" by Shreve Town Company as early as 1836.[4]  This of course was the time period in which Larkin Edwards sold his floating grant to Angus

---

[1] Doc. 88-3, Exhibit A, p. 7.

[2] LA C.C. Art. 2431 (1825).

[3] . *Neblett v. Placid Oil Co.*, 257 So.2d 167, 172 (La. Ct. App.1971); *Robinette v. Myers*, 510 So.2d 1332, 1334 (La. Ct. App.1987)

[4] *Akin v. Caddo Parish Police Jury,* 234 So.2d 203 (La.App. 2d Cir.1970), *writ ref'd,* 256 La. 75, 235 So.2d 99 (La.1970)

McNeil as evidenced by the documents in Exhibit to Defendant's Memorandum in Support of Summary Judgment.[5] Caddo Parish was created by the State of Louisiana in 1838. Thus, the Parish would have been the first entity with the authority to use the Public Square. When Shreve Town was incorporated into Shreveport in 1839, the Legislative Act specifically exempted any lands owned by the Parish inside the town limits.[6] Therefore, the public dedication rests in the Parish.

In further arguing that the Parish did not own Block 23, Plaintiff cites *McNeil v. Hicks & Howell*[7] for the proposition that just because something is dedicated to the public, that dedication doesn't make it public property. Additionally, Plaintiff argues the property was never "accepted" by the Parish because the Parish did not appoint someone to receive it. What the McNeil case says is that "use by the public of private property does not make the property public."[8] But here, the property always belonged to the public. The question becomes what is the effect of the dedication of Block 23 on the first map of Shreve Town? *City of Shreveport v. Walpole*[9] provides the answer.

In that case, the City of Shreveport sued to have the defendant, Frank Walpole, removed from Block 70, which was a part of "open space" as designated on original maps of Shreveport. The City alleged that space was for public use and that it had title to that space, due to the dedication on the map, since the City's incorporation in 1839. Walpole had made several improvements to the property, erecting buildings, etc., and

---

[5] Doc. 88-3, Exhibit A,
[6] *Id.*

[7] *McNeil v. Hicks & Howell*, 34 La.Ann. 1090 (La. 1882)

[8] *Id.*

[9] *City of Shreveport v. Walpole*, 22 La.Ann 526 (La. 1870)

claimed the lot was "within the definition of common property, which, though it belongs to the corporation, is not for the common use of all the inhabitants of the place, but may be employed for their advantage by the administrators of its revenues. He averred that the corporate authorities of Shreveport had treated the property in question as having that character, by leasing it, and assessing taxes against persons occupying it."[10] He produced notices to pay taxes to the corporation, and tax receipts for taxes paid to it. He showed an ordinance of the corporation for the laying off the "open space" into lots, and for the sale of them. He produced witnesses to prove that the *locus in quo* had never been used by the city for public purposes. Walpole averred that the plaintiff must establish title in writing, and referred to article 449 of the Civil Code [11]

    The Louisiana Supreme Court held four important things: 1) A formal writing was not necessary to dedicate the property to public use; 2) a formal acceptance was not necessary for a dedication of the property to public use; 3) title to the property rested in the City by virtue of the dedication; 4) private persons cannot acquire the property held via public dedication. It should also be noted that the land at issue is also part of the 640 acres initially granted to Larkin Edwards. Based on the court's holding in *Walpole*, title to the Block 23, dedicated to public use on the early maps of Shreveport, vested in Caddo Parish just as the title to Block 70 in *Walpole* vested in the City of Shreveport.

---

[10] *Id.* At 527

[11] *Id.*

II. **Plaintiff Erroneously Asserts that Defendant Could Not Have Acquired the property by Acquisitive Prescription**

Plaintiff next argues that Caddo Parish could not have acquired Block 23 by acquisitive prescription, because: 1) the Defendant does not possess a just title (i.e. legal and transferable title); 2) defendant did not designate a person to accept possession of Shreveport Block 23; 3) defendant did not exist for the thirty years needed for acquisitive prescription.

Ten-year prescription requires: possession of ten years, good faith, just title, and a thing susceptible of acquisition by prescription.[12] Thirty-year prescription does not require just title or good faith.[13]  Defendant would reiterate that based on the fact that the public square was platted and publicly dedicated by Shreve Town Company and the law as was established in *Walpole, supra*, the Parish has just title to Block 23.  The 1860 minutes show the earliest physical possession of the property.  January 3, 1860 minutes show that the Courthouse was finished and located on the public square, as Ordinance No. 1215 was adopted allowing a committee to make changes to the Clerk of Court's office, let a contract for grading of the square and making sidewalks around it, constructing a cistern and placing gas fixtures.[14]  At the hearing on the preliminary injunction, Plaintiff's expert, Dr. Gary Joiner, testified that courthouses have sat on the public square since the 1850s, and the square has consistently been maintained by Caddo Parish since that time.[15]  Therefore, the Parish had acquired property by ten-

---

[12] La. C.C. Art 3445 (1825).

[13] La. C.C. Art 3465 (1825).

[14] Doc. 88-3, Exhibit A.

[15] Doc. No. 51 at p. 59.

year prescription by 1870.  However, the worst-case scenario is that the Parish acquired the property by 1890, pursuant to thirty-year prescription.

Plaintiff makes an argument that the Caddo Parish Police Jury was a "precarious possessor" because the 1860 minutes indicate that it only had permission to build a courthouse on Block 23.  However, the June 1846 and August 1846 police jury minutes clearly show that title to the Block 23 is what was investigated-not whether the police jury had permission to use the property.[16]  This argument is without merit.

Finally, Plaintiff argues that the Parish's possession was interrupted each time Louisiana promulgated a new state constitution and during the time that Louisiana seceded from the Union.  Plaintiff cites *New York Belting and Packing Company v. T.W. Jones*[17] in support of the latter contention.  The issue in this case was whether a plaintiff who had been paid with Confederate funds during the secession could make a claim after the war that it had never been paid because Confederate money was worthless.  The Louisiana Supreme Court found: 1) that the plaintiff's claim had prescribed; and 2) prescription had not been interrupted by the payment of worthless money, because such payment had not been made voluntarily and was not a tacit acknowledgement of a debt sufficient to interrupt prescription. That case has nothing to do with acquisitive prescription and whether the time was interrupted during the state's secession.  Indeed, the Louisiana Supreme Court has held that, even when a member of the Confederacy, the State of Louisiana had the power to sell its lands under the

---

[16] Doc. 88-4, Exhibit B, pp. 5 and 8.

[17] *New York Belting and Packing Company v. Jones*, 22 La.Ann.530 (La. 1870).

government then organized.[18] A police jury, which was how Caddo Parish Government was organized at the time, derives its power from the State. If the transactions of the State during the Civil War were not void, then it stands to reason that neither were the transactions of its political subdivisions. Plaintiff cites no authority for the proposition that a new police jury was formed, interrupting prescription, each time a new state constitution was enacted.

### III. Plaintiff Erroneously Asserts Ownership of the Portion of Block 23 Upon Which the Confederate Monument sits.

For the reasons previously stated in Defendant's Memorandum in Support of Motion for Summary Judgment[19], as well as those articulated by the Court in its Denial of Preliminary Injunction[20] and Denial of Motion for Consideration of Preliminary Injunction[21], it is clear that Plaintiff cannot prove that it owns the land under the Confederate Monument.

### IV. Conclusion

There are no genuine issues of material fact in this case. For the foregoing reasons and the reasons set forth in its Motion for Summary Judgment, Defendant's Motion for Summary Judgment should be granted.

---

[18] *See Cole v. Thompson*, 35 La.Ann. 1026 (La. 1883).
[19] Doc. 88-1.
[20] Doc. 38.
[21] Doc. 82.

Respectfully submitted,

OFFICE OF THE PARISH ATTORNEY
PARISH OF CADDO


BY:     s/Donna Y. Frazier
Donna Y. Frazier, Bar Roll No. 24420
Parish Attorney
Henry M. Bernstein, Bar Roll No. 03011
Assistant Parish Attorney
Government Plaza
505 Travis Street, Suite 810
P. O. Box 1127
Shreveport, Louisiana 71163-1127
Telephone (318) 226-6947
Facsimile (318) 226-6974
ATTORNEYS FOR CADDO PARISH
COMMISSION


CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was served on all counsel of record in this matter via CM/ECF on July 6, 2018.


Dick "Dave" Knadler
Law Office of Dick "Dave" Knadler
3223 First Street
Mansfield, LA 71052

       s/Donna Y. Frazier
OF COUNSEL