# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | |
|---|---|
| **SHREVEPORT CHAPTER #237 OF THE UNITED DAUGHTERS OF THE CONFEDERACY** | **CASE NUMBER: 17-CV-01346** |
| Plaintiff, | **JUDGE: ROBERT G. JAMES** |
| **VERSUS** | |
| **THE CADDO PARISH COMMISSION, ET AL.** | **MAGISTRATE JUDGE: MARK L. HORNSBY** |
| Defendants. | |

### MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION AND LIST OF OBJECTIONS OF RULING GRANTING SUMMARY JUDGMENT FILED BY DEFENDANT

**MAY IT PLEASE THE COURT:**

### SUMMARY OF THE PROCEDURAL HISTORY OF THE CASE

The Shreveport Chapter #237 of the United Daughters of the Confederacy (hereinafter "UDC") filed this case because of the viewpoint discrimination against it by the Defendants Caddo Parish Commission ("Commission") and its seven (7) individual members who voted for Resolution No. 69 of 2017 ("Resolution No. 69") on about October 19, 2017. Although Plaintiff UDC acquired ownership of the land underneath the Confederate Monument via acquisitive prescription (the Defendant neither acquired ownership by acquisitive prescription nor by dedication for the public purposes for the courthouse), Plaintiff UDC has a quitclaim deed which confers any ownership interest of some of the heirs of Larkin Edwards to it. As for the Defendant there is ample evidence of a dedication of Shreveport Block 23 for the construction of the Caddo Parish Courthouse and permission for "public use" from the owners of Shreveport Block 23 in the 1840s. In addition Caddo Parish does not adversely possess Shreveport Block 23 or possess any written instrument which purports to give the said parish

1

ownership of it. For these reasons, Defendant could not acquire the ownership of Shreveport Block 23 via either the ten (10) or thirty (30) years prescription.

The Defendant's decision to order the removal of the Confederate Monument in order to satisfy the opposing views of the Defendant's is not legitimately related to any government interest much less narrowly tailored to meet it. And as a result of Defendant's violation of the Plaintiff's First, Fifth, and Fourteenth Amendment Rights, Plaintiff filed suit under 42 U.S.C. § 1983. On December 11, 2017, this Honorable Court held a hearing on the Plaintiff's *Motion for Preliminary Injunction*. After taking it under advisement, this Honorable Court denied the Plaintiff's *Motion for Preliminary Injunction* on January 26, 2018. On February 6, 2018, the Plaintiff filed a *Motion to Reconsideration* of this Honorable Court's *Denial of Preliminary Injunction* and this Honorable Court denied the said motion on May 14, 2018. The Defendant filed its *Motion for Summary Judgment* on May 31, 2018. And the Court heard oral arguments on July 18, 2018. On July 25, 2018, the Court granted Defendant's *Motion for Summary Judgment*. For this reason the Plaintiff filed its *Motion for Reconsideration and List of Objections of Ruling Granting Summary Judgment.*

## SUMMARY OF THE GROUND FOR MOTION FOR RECONSIDERATION

A motion to reconsider is available to correct manifest errors of law and fact, or to present newly discovered evidence. *Wolves v. National Railroad Passenger Corp.*, 1990 WL 84519, at *1 (N.D. Ill. 1990) (not reported in F. Supp.) (citing Publisher's Resource Inc. v. Walker-David Publications, Inc., 726 F.2d 557, 561 (7th Cir. 1985)). A motion to reconsider should be used neither to introduce new evidence that was available during original consideration, nor to introduce new legal theories. *Calderon v. Reno*, 56 F.Supp.2d 997, 998 (N.D. Ill. 1999) (citing Publisher's Resource, 762 F.2d at 561)). In the instant matter Plaintiff UDC avers that the Court should have considered the Quitclaim Deed as

evidence of ownership by the Plaintiff. Furthermore, the Defendant did not raise its ownership claim neither by acquisitive prescription nor by dedication in either of its responsive pleadings. Furthermore, the Plaintiff UDC avers that the Court should have considered the nullification of the Act of Sale signed by Larkin Edwards and the owners of the Shreve Town Company. [See, 90-1]. This said nullification clearly states, "Now it is agreed upon and understood between myself and the said Angus McNeil, here present and signing these present, as well accepting as annulling the former transfer from me to him, that the said sale and transfer of the above-described tract of land recorded in the office of the Parish Judge of the said Parish of Natchitoches, under the date of the third day of February Eighteen hundred and thirty six, shall be considered as null and void and as thought the same had never been passed, an I do hereby further bind myself, my heirs, executors and administrators, to pass and sign an authentic Act of Sale of the above mentioned tract of land before any Notary or other public officer duly authorized to receive and record contracts in the said State whenever I or they shall be legally required so to do." [See, Doc. 90-1 p. 16 of 37.] For this reason the Treaty with the Caddo Nation is the controlling law in the instant matter concerning the ownership of Shreveport Block 23. See, *Treaty with the Caddo*, 1835, 1835 WL 3732 (Trty.) and *United States v. Brooks*, 51 U.S. 10 How. 442 (1850).

A motion to reconsider a remand order is proper "where the court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, which made an error not of reasoning but of apprehension." *Calderon*, 56 F.Supp. 2d at 999 (citing Bank of *Waunake v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990)). "A further basis for a motion to reconsider would be a controlling or significant change in the law or facts since the submission of the issue to the Court." *State Bank of India v. Commercial Steel Corp.*, 2001 WL 423001, at *2 (N.D.Ill. 2001) (not reported in F.Supp.2d). "Such problems rarely arise and the motion to reconsider should be equally rare." *State Bank of India v. Commercial Steel Corp.*, 2001 WL

3

423001, at *2 (N.D.Ill. 2001) (not reported in F.Supp.2d) (citing *Rounds v. City of Chicago*, No. 94 C. 1708, 1996 WL 99408, at *1 (N.D. Ill. March 5, 1996) (citations omitted), aff'd, 95 F.3d 1154 (7th Cir. 1996)). In the instant matter and due to the fact that Shreveport Block 23 is still land that is the subject matter of the treaty with the Caddo Indian Nation (1835) because of the subsequent nullification of the purported Act of Sales, as stated earlier Plaintiff UDC avers that the controlling law is *United States v. Brooks*, 51 U.S. 10 How. 442 (1850); and for this matter Court should not have relied on *Akin, et al. v. Caddo Parish Police Jury*, 234 So.2d 203. [See, Doc. 90-2, 93-5, 93-16, & 93-17]. Furthermore, the evidence (such as the nullification of the said purported Act of Sale, the said Quit Claim Deed, the 2002 Title opinion commissioned by Defendant and the Defendant's official website) presented by the Defendant directly contradicts that the Defendant owns Shreveport Block 23. [See, Doc. 93-7 & 93-11].

## LIST OF OBJECTIONS OF FINDING OF FACTS

OBJECTIONS No. 1 thru No. 8 contained in Doc. 44: For purposes of appeal to the Higher Court, Plaintiff UDC reiterates, incorporaes by reference, and further states all eight (8) objections contained in its said Motion to Reconsider (See, Doc. 44 and Exhibit 1). Plaintiff further reiterates that in satisfies the entire four-prong test: (1) substantial likelihood that plaintiffs will eventually prevail on the merits; (2) a showing that plaintiffs will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to plaintiff outweighs whatever damage the proposed injunction may cause the opposing parties; and (4) a showing that the injunction, if issued, would be be adverse to the public interest. See, *Planned Parenthood Ass'n of Hidalgo Cty, Tex., Inc. V. Suehs*, 692 F.3d 343, 348 (5th Cir. 2012); *accord Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974).

OBJECTIONS No. 9 thru 13 contained in Doc. 85: For purposes of appeal to the Higher Court, Plaintiff UDC reiterates, incorporates by reference, and further states all five (5) objections contained

in *Objections to Ruling Denying Plaintiff's Motion for Reconsideration Pursuant to Rule 52(b)*. (See, Doc. 85 and Exhibit 2).

OBJECTION No. 14: For purposes of appeal to the Higher Court, Plaintiff UDC reiterates, incorporates by reference and objects to the Rulings Denying Plaintiff's Motion for Injunctive Reliefs (dated January 26 and May 14 respectively) on the grounds stated in OBJECTIONS No. 1 thru 13.

OBJECTION No. 15: With all due respect and based on the Court's abuse of discretion in an arbitrary and capricious manner (and clearly erroneous) with its said legal conclusion that "the Court finds the Caddo Parish Commission has the authority to remove the monument which sits upon property the Parish holds in trust for public use." [See, Doc. 108, p. 1 of 20]. Plaintiff UDC shows that it presented evidence such as its Quitclaim Deed to the land underneath the Caddo Parish Confederate Monument, the title opinion commissioned by the Defendant (which did not exclude the Plaintiff UDC as an owner), the nullification of the Act of Sale signed by Larkin Edwards and the owners of the Shreve Town Company (which is evidence that the heirs of Larking Edwards, interested members of the Caddo Nation and the Caddo Nation itself has ownership/financial interest in Shreveport Block 23), a page from the Defendant's official website admitting, "...this monument sits is that if does not belong to the Commission but to the United Daughters of the Confederacy.", and more as evidence that it owns the land underneath the said monument. [See, Doc. 90-2, 93-5, 93-6, 93-7 & 93-11]. Furthermore, the Defendant does not possess one written conveyance document which purports that it owns Shreveport Block 23; and the Defendant never took adverse possession of Shreveport Block 23 either. And finally, the Defendant did not object to any of the evidence presented by Plaintiff UDC which is proof ownership by it. Therefore, it is a material issue of dispute of a material fact over which entity owns Shreveport Block 23. And the Court found no underlying facts which nullifies any of the evidence presented by the Plaintiff UDC (to include its said Quit Claim Deed or the nullification of the Act of Sale between

Larkin Edwards and the owners of the Shreve Town Company). Thus, summary judgment should not have been granted.

OBJECTION No. 16: With all due respect and based on the Court's abuse of discretion in an arbitrary and capricious manner (and clearly erroneous finding), Plaintiff UDC objects on the grounds that its *Ruling* violates the treaty with the Caddo Nation (1835). See, *Treaty With the Caddo*, 1835, 1835 WL 3712 (Trty.) Since Act of Sale between Larkin Edwards and the owners of the Shreve Town Company was nullified (and said instrument was not invalidated within the delays according to Louisiana law nor did the Defendant object to being introduced), this said treaty is the controlling document in the instant matter concerning the ownership of Shreveport Block 23. *Id*. And for purposes of appeal, Plaintiff UDC should be given an opportunity to amend its petition to raise the said treaty as an affirmative defense against claims by Defendant concerning the ownership of Shreveport Block 23. Furthermore, the Court did not contemplate the ownership interest of either the heirs of Larkin Edwards, members of the Caddo Indian Nation, nor the Caddo Indian Nation itself (for the said Nation never received all of the payment due it from the United States government). *Id*. Thus, the Court ruling deprived the Plaintiff UDC, heirs of Larkin Edwards, member of the Caddo Indian Nation, and the Caddo Indian Nation itself without just compensation for the taking of Shreveport Block 23 by the Defendant. *Id*. And the *Brooks* court gave the Plaintiff UDC standing in order to raise any land issues arising from the said treaty. A taking by the Defendant without just compensation to the interested members of the Caddo Nation and the Caddo Nation itself continues a long line of treaty violations by the government entities such as the Defendant (especially when the Caddo Nation received no notification of this taking without just compensation by the Defendant pursuant to Federal Rule 19).

OBJECTION No. 17: With all due respect and based on the Court's abuse of its discretion in arbitrary and capricious manner (and clearly erroneous finding), Plaintiff UDC objects that the Court did not

order that the Defendant should notify the other parties which have an ownership interest in Shreveport Block 23 such as the heirs of Larkin Edwards, interested members of the Caddo Nation, and the Caddo Nation of Oklahoma pursuant to Federal Rule 19. For under the said treaty and subsequent nullification of the purported Act of Sale (signed by Larkin Edwards and all other parties), the heirs of Larkin Edwards, interested members of the Caddo Nation, and the Caddo Nation of Oklahoma were not accorded complete relief because the Defendant did not join them in this lawsuit. Plaintiff's lawsuit did not deprive any of those said parties on their ownership interest especially since it had a Quit Claim Deed to the land underneath the Caddo Parish Confederate Monument. Thus, it was not the Plaintiff UDC's responsibility to either notify the heirs of Larkin Edwards, interested members of the Caddo Nation, and the Caddo Nation of Oklahoma nor to join them in this lawsuit. However, the it is the Defendant's duty to do so when it claims ownership of Shreveport Block 23.

OBJECTION No. 18: With all due respect and based on the Court's abuse of its discretion in arbitrary and capricious manner (and clearly erroneous finding) the Court grants relief which was not asked for or within the power of the court to grant. Plaintiff filed a complaint and there was no cross-complaint filed by Defendant which asked for the relief granted by the said *Ruling*. The only relief that the court can grant is to grant the motion to dismiss the matter and not awarding ownership of Shreveport Block 23 to Defendant. Furthermore, in the instant matter the Court did not order the joining of required persons by Defendant pursuant to Federal Rule 19. This is a matter where joinder is feasible because heirs of Larkin Edwards, interested members of the Caddo Nation, and the federally recognized Caddo Nation exists; and none have been notified of the taking of their property (without just compensation) interest by the Defendant Caddo Commission. The Plaintiff's lawsuit did not take any interests away from the heirs of Larkin Edwards, interested members of the Caddo Nation, and the Caddo Nation itself. Thus, the Plaintiff is not required to either notify or to join the heirs of Larkin Edwards, interested

members of the Caddo Nation, and the Caddo Nation itself of this lawsuit under Rule 19.

OBJECTION No. 19: With all due respect and based on the Court's abuse of its discretion in arbitrary and capricious manner (and clearly erroneous finding) because neither Defendants' answer nor motion asked for declaratory relief. Therefore, the Court cannot make a finding allowing removal of the monument or the use of the property. Furthermore, under Rule 19, the heirs of Larkin Edwards, interested members of the Caddo Nation, and the Caddo Nation itself are required to be joined by the Defendant if the Court has to rule on whether or not the Defendant owns Shreveport Block 23. There was no Court order whereby the heirs of Larkin Edwards, interested members of the Caddo Nation and the Caddo Nation itself be made an involuntary party to the lawsuit pursuant to Rule 19. For the evidence (which the Defendant did not object to the introduction of) clearly shows that the Plaintiff UDC, heirs of Larkin Edwards, interested members of the Caddo Nation, and the Caddo Nation itself all have either an ownership interest or financial interest in Shreveport Block 23. Since the federal government did not fully compensate the Caddo Nation pursuant to said treaty, the Caddo Nation has been deprived of a means of compensation when the Defendant took Shreveport Block 23 without just compensation. In addition according to the minutes (dated June 18, 1903) the defendant clearly relinquishes the dedication of the land for the public use of the courthouse underneath the Caddo Parish Confederate Monument. For the minutes states:

> "There rules were suspended and Mr. W.H. Wise, on behalf of the Daughters of the Confederacy, made an earnest appeal for an appropriation of $1000 for the Confederate monument, at the same time requesting that the monument association be given the front portion of court house square as a site for the monument.

> "Moved by J.S. Young that the $1000 be allowed and the front plat of court house square be reserved for that purpose, which motion was unanimously adopted."

Under any legal definition of the word "reserved" or the phrase "reserved for that purpose", the Defendant clearly relinquished the use of the land underneath the Caddo Parish Confederate Monument

for public purposes for the courthouse. Thus, the Defendants abandoned this dedication for the public purpose for the courthouse; and the land reverts back to the original owners (the original owners being the heirs of Larkin Edwards and interested members of the Caddo Nation per said Treaty). In addition, the dedication of Shreveport Block 23 for the public purpose of the courthouse did not extinguish any potential financial interest that the Caddo Nation may have in it because there is a lack of evidence that the federal government did not fully compensate the Caddo Nation. Also, since the federal government did not fully compensate the Caddo Nation, the said Nation may have acquired an ownership interest in Shreveport Block 23. And finally, the Plaintiff UDC avers that it detrimentally relied on the donation of the property (even though the Defendant did not own the land underneath the said monument) by the Defendant and/or the relinquishment of the dedication of the land for the public purposes for the courthouse underneath the said monument by the Defendant. Thus, the Defendant should compensate the Plaintiff UDC for its detrimental reliance. Also, the dedication of Shreveport Block 23 for the public purpose for the courthouse did not confer ownership to the Defendant.

OBJECTION No. 20: With all due respect and based on the Court's abuse of its discretion in arbitrary and capricious manner (and clearly erroneous finding), Plaintiff UDC objects that the court did not address the Quit Claim Deed or consider the factual disputes identified by Plaintiff pursuant to Rule 56. Under Rule 56, "...[a] party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In the instant matter the Court did not address the Quit Claim Deed or any of the factual disputes identified by Plaintiff in Doc. 90-5. Instead the Court retroactively revived an Act of Sale from 1836 (without the Defendant requesting the retroactive revival of the said nullified Act of Sale). Furthermore, the said monument itself is private property, and there

9

was no motion or request to remove the monument. The issues involved the property upon which the monument sits and not the monument itself. In addition, the Honorable Court did not consider that the Defendant's claims of ownership is not based on any conveyance document; but on the dedication of Shreveport Block 23 which does not convey ownership to the Defendant either. Also, the Court did not consider that the heirs of Larkin Edwards, interest members of the Caddo Nation and the Caddo Nation itself may have an ownership interest in Shreveport Block 23. The factual disputes addressed by Plaintiff UDC's Doc. 90-5 also addresses its constitutional issues concerning the violation of its First, Fifth, and Fourteenth Amendment by Defendant. It seems that the Court found no evidence to support any of the Plaintiff UDC's constitutional claims especially its Fifth Amendment claim. Plaintiff UDC avers that the complained Resolution No. 69 of 2017 and the deposition testimony of Caddo Administrator Woodrow Wilson clearly shows that no public monies have been approved for the removal of the Caddo Parish Confederate Monument. Since there is no approval of public monies, that leaves only the Plaintiff UDC to bear the costs of removal and the land underneath the said monument. How that is not evidence of a taking without just compensation under the Fifth Amendment? For absence any appropriation of public monies by Defendant, leaves only the Plaintiff UDC to bear the costs of the removal and the loss of the land underneath the said monument without compensation. Furthermore, Resolution No. 69 did not explicitly state any due process right to appeal said resolution which prima facie violates the Plaintiff UDC's Fourteenth Amendment rights. And the Defendant ordered the removal of said monument for "political reasons" according to the deposition testimony of Caddo Parish Stephen Jackson (then he back-tracked after this admission). The Defendant's political reasons for ordering the removal violates Plaintiff UDC's First Amendment rights. None of these appeared to be addressed by the *Ruling*.

OBJECTION No. 21: OBJECTION No. 20: With all due respect and based on the Court's abuse of

its discretion in an arbitrary and capricious manner (and clearly erroneous finding), Plaintiff UDC objects on the Court's abuse of its discretion in arbitrary and capricious manner (and clearly erroneous finding) when it shifted the burden of proof to the Plaintiff UDC, it objects that the court does not find that there was no genuine issue of material fact required by Rule 56. Instead the Court shifts the burden of proof to the Plaintiff UDC to show that there is a genuine issue of material fact where it states, "the Court finds Plaintiff has failed to carry its burden and show there is an issue of material fact warranting atrial". However, the Court should have kept the burden of proof on the Defendant as required by Rule 56. Therefore, the Court did not satisfy both prongs of the summary judgment requirements under Rule 56. Also, the Court did not address the Plaintiff UDC's assertion that laches should apply since the events concerning the transfer of the land (due to the relinquishment of the dedication of public use for the court house by the Defendant) underneath the Caddo Parish Confederate Monument began in 1903. Also, the *Ruling* did not address that for the said monument should not be considered for public use for the courthouse, the Defendant needs a Cooperative Endeavor Agreement with Plaintiff UDC for the said monument to be for the public purpose for the courthouse. Since there is no Cooperative Endeavor Agreement (which is required by the Louisiana Constitution and by statute) for the Caddo Parish Confederate Monument to be considered for public use for the courthouse, the said monument is for a private purpose (which is further evidence that the Defendant voluntarily relinquished the land underneath the said monument for the dedication for the public use for the courthouse).

OBJECTION No. 22: With all due respect and based on the Court's abuse of its discretion in an arbitrary and capricious manner (and clearly erroneous finding), Plaintiff UDC objects that the Court did not consider Plaintiff UDC's objections to Defendants' evidence in Doc. 90-4. This highlights the factual disputes in the record which preclude summary judgment under Rule 56.

OBJECTION No. 23: With all due respect and based on the Court's abuse of its discretion in an

arbitrary and capricious manner (and clearly erroneous finding), Plaintiff UDC objects that the Court did not consider that Defendants did not object to Plaintiff UDC's evidence which means that the disputed facts are uncontested under Rule 56. This, in turn, prevents summary judgment under Rule 56.

OBJECTION No. 24: With all due respect and based on the Court's abuse of its discretion in an arbitrary and capricious manner (and clearly erroneous finding), Plaintiff UDC shows that the doctrines of res judicata (claim preclusion) and collateral estoppel (issue preclusion) bars the Defendant from claiming the ownership of Shreveport Block 23. See, *Akin, et al. v. Caddo Parish Police Jury*, 234 So.2d 203. Res judicata is raised when a party thinks that a particular claim was already, or could have been, litigated and therefore, should not be litigated again. When addressing a res judicata argument, a court will usually look at three factors. First, there was previous litigation in which identical claims were raised, or in which identical claims could have been raised. The second factor to be considered is that the parties must be the same parties as those who litigated the original action; but in this matter there is privity between Caddo Parish Police Jury and the Plaintiff UDC. The third factor is that the original action must have received final judgment on the merits and the Defendant did under *Akins*.

For res judicata to apply, the parties do not have to be exactly identical. If a party to the second action is in privity with a party in the first action, res judicata may apply. Privity means that the second party is connected or shares the same interests as the first party. In the instant matter, both the Defendant and Plaintiff UDC share the interest that both have a property interest in the land underneath the Caddo Parish Monument. Thus, there is privity between the two parties for purposes of consideration of res judicata barring the Defendant's claim of ownership. The third factor to consider is whether the original action was judged on the merits of the case and whether that judgment was a final judgment. Under the federal rules, it must be raised by affirmative defense. In most situations, if a defendant does not raise

the defense of res judicata, it is waived. See *Rotec Industries, Inc. v. Mitsubishi Corp.*, 348 F.3d 1116, 1119 (9th Cir. 2003):

> "Claim preclusion is an affirmative defense which may be deemed waived if not raised in the pleadings. Moreover, the failure of the defendant to object to the prosecution of dual proceedings while both proceedings are pending also constitutes waiver."

However in the instant matter the Defendant did not file a counterclaim which would have allowed the Plaintiff UDC to file an affirmative defense of res judicata because the court in *Akins* found that Caddo Parish was in "actual possession" (rather then adverse possession) of Shreveport Block 23. And it did not exclude the ownership interest of the Plaintiff UDC. No where in the *Akins* decision does that court find that the Caddo Parish Police Jury is the owner of Shreveport Block 23 (otherwise the 2002 title opinion commissioned by the Caddo Parish Commission would have found Caddo Parish to be the owner of Shreveport Block 23 too). Thus, the *Akins* court did not find that the Defendant had "adverse possession" of Shreveport Block 23. Therefore, Defendant is barred from claiming the ownership of Shreveport Block 23. Although, the court in *Akins* finds that Shreveport Block 23 constitutes "public property". This is a vague statement considering that the indisputable private Caddo Parish Confederate Monument sits on Shreveport Block 23 too. Furthermore, the court in *Akin* found that "The Caddo Parish Police Jury has, as a fact, exercised jurisdiction and control over and has administered the "public square" for 124 years as a location for public buildings." [See, Doc. 93-16 at p. 5] The *Akins* court did not find that the Caddo Parish Confederate Monument is a "public building". Therefore, the *Akins* court did not include the Caddo Parish Confederate Monument within the scope of its decision. And this is further evidence that the Defendant did not exercise jurisdiction and control over the said monument. Thus, the court in *Akin* did not find that Caddo Parish Police Jury owned Shreveport Block 23 instead it found that it "exercised jurisdiction and control over" said courthouse square. That language used by that said court does not declare the Defendant to be the owner of

13

Shreveport Block 23. Thus, the ownership issue for Shreveport Block 23 has already been litigated on behalf of the Defendant; and it was not found not to be an owner by the court in *Akins*. Thus, res judicata bars the Defendant from making a claim to own Shreveport Block 23.

Collateral estoppel arises when the claim (cause of action) at the bar has not been litigated, but the exact issue that is now before the court has been raised and litigated in an earlier action or proceeding. Collateral estoppel is a bit different than res judicata, although the rationale is the same – it is a tool to prevent re-litigation of issues already litigated. See *U.S. v. Wells,* 347 F.3d 280, 285 (8th Cir. 2003):

> "The collateral estoppel doctrine provides that 'when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'

The requirements that must be satisfied before the doctrine of collateral estoppel is applied are similar to those for res judicata, but there are differences. First, the issues in the first and second litigation must be identical and must have been before a court. Second, the issue must have been actually litigated. Third, a final judgment must have been rendered, ultimately deciding the issue in question. The first factor is that the issues in the previous and subsequent litigation must be identical. In *Akins*, the Defendant claimed to be an owner of Shreveport Block 23; and the court did not rule that the Defendant owned it. In most cases, the identity of the parties, or those in privity to the original parties, must be the same as in the first action. Some courts, however, will not impose such a requirement. See *Brockman v. Wyoming Dept. of Family Services*, 342 F.3d 1159, 1166 (10th Cir. 2003). Since both the Plaintiff UDC and the Defendant occupy Shreveport Block 23, there is privity between the parties; and the same issue of ownership by acquisitive prescription or dedication by the Defendant has been raised by the Court (since the Defendant did not raise it in either of its *Answers*). The issues of ownership is identical or very similar. When considering the doctrine of collateral

estoppel, it is important to note that the subject matter of the subsequent litigation does not need to be the same as the subject matter of the previous litigation for the doctrine to apply. As long as the issue was already litigated, collateral estoppel can apply. The second factor is whether the issue was actually litigated during the first case. Unlike with res judicata, if the issue could have been raised, but wasn't, the Defendant will not be collaterally estopped from raising the issue in subsequent litigation. The third factor is that the issue must have necessarily been decided on the merits; and it was decided on the merits in *Akin* without finding that the Defendant was the owner of Shreveport Block 23. For collateral estoppel to apply, a court must decide whether (i) issue at stake is identical to the one involved in the prior litigation, (ii) the determination of the issue in the prior litigation was a critical, necessary part of the judgment in that earlier action, and (iii) special circumstances exist which would render preclusion inappropriate or unfair." *McDuffie v. Estelle*, 935 F.2d 682, 685 (5th Cir. 1991). Therefore, the *Akins* decision satisfies all of the prongs previously mentioned in *McDuffie*. Since the issue has been raised by the Defendant in its memoranda, the Defendant should be collaterally estopped for claiming the ownership of Shreveport Block 23 absence any written conveyance of ownership.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment should be reconsidered and denied. Or in the alternative, Plaintiff UDC should be given leave of Court to amend its complaint.

Respectfully Submitted:

//Dick "Dave" Knadler//

_____
Dick "Dave" Knadler, Bar Roll #27829
3223 First Street
Mansfield, Louisiana 71052
(318) 925-1178
dknadler@hotmail.com

15

CERTIFICATE

I hereby certify that a copy of the above and foregoing has been served upon all attorneys of record in either the U.S. Mail or electronically this 3rd day of August, 2018.

Respectfully Submitted:

//Dick "Dave" Knadler//

_____
Dick "Dave" Knadler, Bar Roll #27829